## London Guarantee and Accident Co. v. Gustave Horn.

1. CONTRACTS—*Construction by the Parties Proper to be Considered by Court.*—The construction placed upon a contract by the parties is a matter proper to be considered by a court in construing it.

2. SAME—*Where One Maliciously Procures the Discharge of an Employe Under a Contract Determinable at Will.*—Where a person maliciously brings about the discharge of an employe, where the contract between the latter and his employer is terminable at will, such employe is entitled to recover. The fact that the term of service interrupted is not for a fixed period is of itself no bar to the action.

3. EMPLOYMENT—*Action Lies Where a Third Party Procures the Discharge of an Employe.*—An action lies in behalf of an employe against a guarantee and accident company which has unlawfully and maliciously procured the employer to discharge such employe from his employment for the indirect purpose of injuring the employe or of benefiting the company at his expense.

4. SAME—*Disturbing Another Therein, to Compel Him to Do Some Act Against His Interest.*—No persons, individually or by combination, have the right to directly or indirectly interfere or disturb another in his lawful business or occupation, or to threaten to do so for the sake of compelling him to do some act which in his judgment his interest does not require. Losses willfully caused by another from motives of malice to one who seeks to exercise and enjoy the fruits and advantages of his own enterprise, industry, skill and credit, will sustain an action.

Trespass on the Case.—Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAUGH, Judge, presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed March 6, 1902. Rehearing denied March 26, 1902.

Statement by the Court.—Appellee, who was a foreman in the employ of Arnold, Schwinn & Co., a corporation engaged in the manufacture of bicycles and parts thereof, was injured on January 7, 1899, while engaged at his work. Prior to and on this date appellant had in force

a policy of insurance to the amount of $5,000 for each person injured, in favor of Arnold, Schwinn & Co., by which the latter were insured by the appellant against loss from legal liability on account of personal injuries arising on its premises to employes and others. This policy contains the following provisions:

" If, thereafter, any suit is brought against the assured to enforce claim for damages on account of an accident covered by this policy, immediate notice thereof shall be given to the company, and the company will defend against such proceeding, in the name and on behalf of the assured, or settle the same at its own costs, unless it shall elect to pay to the assured the indemnity provided for in clause A of special agreements, as limited therein.

" The assured shall not settle any claim except at his own cost, nor incur any expense, nor interfere in any negotiations or settlement or in any legal proceeding, without consent of the company previously given in writing, but he may provide at the time of the accident such immediate surgical relief as is imperative. The assured, when requested by the company, shall aid in securing information and evidence, and in effecting settlements, and in case the company calls for the attendance of any employe or employes as witnesses at inquests and in suits, the assured will secure his or their attendance, making no charge for his or their loss of time."

Appellant issued during the year 1898 about 5,000 similar policies to this one, of which about 750 were in the city of Chicago.

Some time after appellee's injury he began suit therefor against his employer, Arnold, Schwinn & Co., which was pending on the 26th of June, 1899, and in which he subsequently obtained a verdict and judgment thereon in his favor for $3,500, from which an appeal had been taken that was pending at the time of the trial of this cause. While appellee's suit against his employer was pending, he having returned to his work after his injuries had been sufficiently healed to permit it, on several occasions negotiations were had between him and the representatives of the appellant insurance company relative to a settlement of his said suit against his employer. They were unable to reach an agree-

London Guarantee and Accident Co. v. Horn.

ment, and on June 26, 1899, upon the demand of the insurance company, accompanied by a threat that it would cancel its said policy unless their demand was complied with, Arnold, Schwinn & Co. discharged from its employment the appellee. August 14, 1899, appellee began this action, which is case, for damages, against the appellant insurance company, in which he charges, in substance, that the appellant illegally, maliciously and wrongfully enticed, persuaded and procured Arnold, Schwinn & Co. to discharge him from its said employ and to break and cancel his contract of employment then subsisting between him and said Arnold, Schwinn & Co., against its will and without his fault.

The declaration consists of one original count and four additional counts, which set up the cause of action in different forms. The substance is as above stated. The plea was the general issue. A trial before the court and a jury, commencing on March 5, 1901, resulted in a verdict of $800 in favor of appellee and a judgment thereon, from which this appeal is taken.

At the close of the plaintiff's evidence, as well as at the close of all the evidence, appellant's counsel requested the court to instruct a verdict of not guilty, which requests were denied. For the appellant the court gave eleven instructions, and of its own motion, the appellee having asked no instructions, gave the following:

"12. If the jury find a verdict for the plaintiff, then in assessing his actual damages they may allow him such sum as will compensate him for the actual loss of wages, if any be proven, as was the immediate and direct result of the wrongful acts of the *plaintiff* as alleged in his declaration."

Among other instructions requested by the appellant, which the court refused to give, was the following:

"18. The jury are instructed that, in order for the plaintiff to recover from defendant in this case, it must appear from the evidence that there was a contract of employment, including a specified period and rate of wages."

F. J. CANTY, J. A. BLOOMINGSTON, attorneys for appellant.

CARL A. VOGEL, attorney for appellee; DANIEL V. GALLERY, of counsel.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

It is claimed by counsel for appellant that the learned trial judge committed error in refusing to take the case from the jury, for the reason that no liability of the appellant is shown; that it had the legal right to do what it is claimed by the appellee it did do, viz., maliciously procure his discharge from employment with Arnold, Schwinn & Co. The learned counsel contend that under the second clause of the policy quoted in the statement, it is clear the appellant " is subrogated to practically all the rights of the assured," and that in case of an injury to an employe who brings suit, the insurance company takes the place of the assured— " is to all intents and purposes the assured "—that the assured takes absolutely no part in the proceedings, but is " required by the policy to assist, on request, in effecting settlements, and to give such other assistance in the way of preparation for trial, etc., as is necessary." It is also said that the relation between the company and the assured by virtue of the contract in the policy is fiduciary in its character, and like that of attorney and client or physician and patient, and that because of this fiduciary relationship the appellant had the right to demand of Arnold, Schwinn & Co., that it discharge appellee from its employment, because he had a suit pending to recover for his injuries, even though the appellant, in so doing, was actuated by malice. In other words, appellant's counsel say that in demanding the discharge of appellee it was acting within its legal rights.

Numerous cases, arising upon varied states of fact, are cited by counsel, which we can not, within the limits of this opinion, undertake to review, which go to establish the general proposition that no right of action arises from the doing of an act by one which he has a legal right to do, and does not involve a superior right of the injured person, whatever may be the motive—that unless some definite legal right of the injured person is violated, the wrong is not

London Guarantee and Accident Co. v. Horn.

actionable. Among others may be noted the following cases : Raycroft v. Taynter, 35 Atl. Rep. (Ver.) 53; Moran v. Dunphy, 59 N. E. Rep. (Mass.) 125; Heywood v. Tillson, 75 Me. 225–34; Glendon Co. v. Uhler, 75 Pa. St. 467–71; Bowen v. Hall, 6 Q. B. Div. 333–7.

In the Uhler case, *supra*, the court say:

" The commission of a lawful act does not become actionable although it may proceed from a malicious motive."

In the Heywood case, *supra*, it is said :

" The exercise by one man of a legal right can not be a legal wrong to another."

In the Bowen case, which was an action against one who maliciously induced another to break his contract with the latter's employe, it was said :

" Wherever a man does an act which in law and in fact is a wrongful act, and such an act as may, as a natural and probable consequence of it, produce an injury to another, and in which the particular case does produce such an injury, an action on the case will lie.  *  *  *  The act of the defendants which is complained of must be an act wrongful in law and in fact.  Merely to persuade a person to break his contract may not be wrongful in law or fact. But if the persuasion be used for the indirect purpose of injuring the plaintiff, or of benefiting the defendant at the expense of the plaintiff, it is a malicious act, which is in law and in fact a wrong act, and therefore a wrongful act, and therefore an actionable act, if injury ensues from it."

In the Raycroft case it was said :

" If the defendant's act be legal in itself, and violates no superior right in another, it is not actionable, although it be done maliciously and cause damage to that other."

In the Moran case, which was for damages which resulted in plaintiff's discharge from employment because of false statements made by the defendant concerning the plaintiff to his employer, it was said :

" In the case of a contract of employment, even when the employment is at will, the fact that the employer is free from liability for discharging the plaintiff, does not carry with it immunity to the defendant who has controlled the employer's action to the plaintiff's harm."

The question, then, to be considered in the light of these authorities, and assuming that they state the law correctly, is, was the act of appellant in procuring appellee's discharge, a legal one—did it violate a superior right of appellee? From the evidence it appears, and we think the jury was justified in so finding, that in the different negotiations for a settlement for appellee's injuries, between appellant and him, he was told by appellant's agent that if he, appellee, did not settle his case against his employer for $75 or $100, which amounts were offered him at different times, appellant would see to it that he was discharged from his employment, which he then had with Arnold, Schwinn & Co., and that appellant would see that he did not get work anywhere else; that although appellee's employment was not for any particular time, Arnold, Schwinn & Co. did not desire to discharge him; that it had regular work for him, desired to retain his services as a foreman with limitation as to length of time, notwithstanding the pending suit against it for appellee's injuries, and that Arnold, Schwinn & Co. discharged appellee only because of appellant's demand and because of its threat to cancel its policy of insurance. Appellee's evidence in this regard, in an interview between Mr. Robinett, appellant's agent, and Mr. O'Connell, the representative of Arnold, Schwinn & Co., and himself, at the time of his discharge, is as follows:

"I told Robinett that is what O'Connell told me. Then he said, 'Well, what do you think, Horn? Do you think we will let O'Connell keep you here for two years, and then you turn around and bring a suit against the company? Do you think we will keep you here for two years longer, and feed you for two years? No, sir; we will have to discharge you, and try to force you by starving you a little.' And then he said, 'A half of a loaf is better than none.' Robinett said that to me. He said, 'Half a loaf is better than none, and a steady job is better than a kick in the ass.' And then he said, 'Well, O'Connell, you will have to discharge this man; he refuses to give me a release.' And Mr. O'Connell says, 'Well, I don't know that I have to discharge this man; let me look at the contract first.' He went out and came back. I suppose he got something

London Guarantee and Accident Co. v. Horn.

from the safe.   He went out and came back, and he had a
paper in his hand, and he read it over and then he handed
it to Robinett, and he says, ' Here, read the contract; there
is nothing in this contract that says I have to discharge
this man if he refuses to give a release.'   Then Robinett
read it over, and he says, 'No, there is nothing in this con-
tract that says that you have to discharge him,' but he says,
' Your money is our money, and if you don't discharge him,
I will have to cancel this policy to-day.   I am here to bring
this case to a focus to-day, and if you refuse to lay him off,
I will cancel it; that is my orders.'   And Mr. O'Connell
said, ' Well, Horn, you heard what Mr. Robinett said.   I
am in a bad fix; I don't know what I will do; I don't like
to lay you off; we hate to lay you off.   I have lots of work
up there for you, and I thought you would have a job all
the year round; but if I don't lay you off this insurance
company will make me trouble; they will get me into
trouble; they are going to cancel this policy.   I guess you
had better go up and finish your work, and I will give you
your pay, and you come around some time again, as
soon as you have this case settled, and you will get your
job back.   Your job will always be open for you.'   Well, I
went up stairs, I finished up my work, and then they paid
me off.   I applied there several times.   Saw Mr. Schwinn
and Mr. O'Connell.   They said they would give me my
job back at any time that they would get orders from
the insurance company that I had settled up, but that they
could not employ me, for they would be afraid that the in-
surance company would get them into trouble and cancel
the policy and throw the case back onto them; but that as
soon as the case was settled with the insurance company I
could have my job back."

On cross-examination this evidence is given much more
in detail, and he also details other conversations with Mr.
Bloomingston, appellant's attorney at the time, of a like
nature, and to the effect, in substance, that unless appellee
settled for the amount offered him by appellant that he
would be discharged, and appellant would see to it that he
would not get employment anywhere else in the city.   Ap-
pellee's evidence as to the interview with Mr. Bloomingston
is corroborated by the witness Vogel.   Robinett in his evi-
dence admits that he told appellee when he refused to settle,
that in all probability he would lose his position if he didn't

settle, and that he finally told Arnold, Schwinn & Co., as he thinks, to discharge appellee. " I told him that I guessed that as long as we couldn't settle the case that they might as well let the man out." He, however, denies that he told appellee if he didn't settle the case that he would see that appellee didn't get work anywhere else. Mr. Bloomingston, in his testimony, in substance admits the interview between him, appellee and Vogel, as testified to by them, except that he denies that he made any threat that appellee would be discharged from any place in the city where he might seek employment. No other witnesses than the ones mentioned testified as to the facts and circumstances leading up to and attending appellee's discharge. He was discharged on the 26th day of June, 1899, as the result of appellant's demand upon Arnold, Schwinn & Co., as above stated.

We are of opinion that the act of appellant in procuring appellee's discharge from his employment was wrongful, unlawful, and under the law, if not malicious, it was (to use the language of the English court in the Bowen case), "for the indirect purpose of injuring the plaintiff, or of benefiting the defendant at the expense of the plaintiff," and therefore actionable for any injury which ensued from it to the plaintiff.

There is no provision of the insurance contract that gave appellant any right to demand appellee's discharge. The only claim made by appellant in that regard is under the second clause of the policy, quoted in the statement, from which it is argued that because the appellant is by the contract " subrogated to practically all the rights of assured," and that it is the duty of the assured to aid the appellant " in effecting settlements," therefore from this contract relation there followed the legal right to demand appellee's discharge, in case he refused to settle. This we regard as a strained construction of the contract, not justified by its language. Moreover, the agent of appellant, when called upon by Mr. O'Connell, the representative of appellee's employer, to show the provision of the contract which justified such a demand, admitted that there was " nothing in

this contract that says you have to discharge him." It is well-settled law that the construction placed upon a contract by the parties is a matter proper to be considered by a court in construing it. We think it clearly apparent from the evidence, not only that the appellant's agent gave this construction to the contract of insurance, but that Arnold, Schwinn & Co.'s representative gave it a like construction, and only submitted to appellant's demand to discharge appellee, because of its threat that notwithstanding the contract had no provision justifying it, the policy would be canceled unless appellee was discharged.

If, however, appellant's construction of the contract in this regard is a proper one, then the contract is void so far as it gives to appellant this right, because it is champertous. It takes from Arnold, Schwinn & Co. any right to settle appellee's claim against it without the consent of appellant previously given in writing, and tends to foster litigation.

In North Chicago St. R. Co. v. Ackley, 171 Ill. 100–12, in which the court had under consideration a contract between an attorney and his client, by which the latter agreed not to compromise or settle his claim in suit, the court held that the law does not discourage settlements in cases for personal injuries, and said: "Any contract whereby a client is prevented from settling or discontinuing his suit is void, as such an agreement would foster and encourage litigation." To like effect is the case of Geer v. Frank, 179 Ill. 570–4.

For appellant it is contended that because of its fiduciary relationship with Arnold, Schwinn & Co. by reason of the contract, and because, as it is claimed, no malice, slander or libel of appellee is shown, that he had no right of action. There is no evidence that appellant in any way slandered or libeled appellee, and no claim is made by appellee in that respect. No authority is cited holding that appellant should be relieved because of any fiduciary relationship arising out of the contract, and appellant's counsel frankly conceded that the point is not urged to any length.

We think it clear, from what has been said, that the act of appellant in procuring appellee's discharge was without any basis of legal right, and from the evidence in the case, some of which has been above recited, it is clearly apparent that what appellant did was for the indirect purpose of injuring the appellee or of benefiting appellant. If this was so, then clearly, malice, as matter of law, on the part of appellant is established. What appellant sought was to deprive appellee of his employment and means of a livelihood, so as to force him to the settlement of his claim for his injuries, and thus relieve it from liability therefor under its contract.

In the case of Doremus v. Hennessy, 176 Ill. 608–14, in which was considered the question of the malicious interference by appellants with appellee's laundry business, among other things, the court said:

"The common law seeks to protect every person against the wrongful acts of others, whether committed alone or by combination, and an action may be had for injuries done which cause another loss in the enjoyment of any right or privilege or property. No persons, individually or by combination, have the right to directly or indirectly interfere or disturb another in his lawful business or occupation, or to threaten to do so for the sake of compelling him to do some act which in his judgment his interest does not require. Losses willfully caused by another from motives of malice to one who seeks to exercise and enjoy the fruits and advantages of his own enterprise, industry, skill and credit, will sustain an action."

From this statement of the law, it seems clear that under the evidence appellee had a right of action against appellant.

It is, however, claimed that inasmuch as appellee's contract was for no definite period of time, and since there is no evidence in the record to sustain any claim that appellant prevented appellee's employment with any other person or corporation than Arnold, Schwinn & Co., the appellee has failed to make out his case. There is no evidence that appellant prevented appellee's employment except by Arnold, Schwinn & Co., and its threat in that

regard is only proper to be considered on the question of its malice.  Appellee's counsel concede, and we think it is the law, that where one maliciously brings about the discharge of an employe, where the contract between the latter and his employe is terminable at will, the injured employe is entitled to recover.

In Chipley v. Atkinson, 1 Southern Rep. 934 (23 Fla. 206), which was an action by an employe against one who had maliciously procured the employer to discharge the plaintiff, the court said, after a review of numerous authorities:

" It is apparent that neither the fact that the term of service interrupted is not for a fixed period, nor the fact that there is not a right of action against the person who is induced or influenced to terminate the service, or to refuse to perform his agreement, is of itself a bar to an action against the third party maliciously and wantonly procuring the termination of or a refusal to perform the agreement. It is the legal right of the party to such agreement to terminate it or refuse to perform it, and in doing so he violates no right of the other party to it; but, so long as the former is willing and ready to perform, it is not the legal right, but is a wrong on the part of a third party to maliciously and wantonly procure the former to terminate or refuse to perform it.  Such wanton and malicious interference for the mere purpose of injuring another, is not the exercise of a legal right.  Such other person who is in employment by which he is earning a living, or otherwise enjoying the fruits and advantages of his industry or enterprise or skill, has a right to pursue such employment undisturbed by mere malicious or wanton interference or annoyance."

A judgment for the plaintiff was reversed because, among other things, the declaration charged that the contract was for a long period of time, whereas it was held that if there was no agreement for any particular period of time, it should have been so alleged.  An instruction for the defendant, which told the jury that if the contract was terminable at will, then the procurement by the defendant of its dissolution did not constitute a ground of action, was, however, held to have been properly refused.  To a like effect in principle are the following cases:  Curran v. Galen,

152 N. Y. 33; Walker v. Cronin, 107 Mass. 555–64; Moran v. Dunphy, 177 Mass. 485; Lucke v. Assembly, 77 Md. 396; Plant v. Woods, 176 Mass. 492–8.

In the Maryland case, in which the plaintiff, a non-union man, was discharged by his employer because of a threat of a labor organization of union men that if he were retained it would notify other labor organizations that the employer's house was a non-union one, and thus subject him to great loss, the court quotes approvingly from the Bowen and Chipley cases cited, *supra*, and among other things says, in speaking of the plaintiff's contract:

" It related to the most serious right affecting a laboring man's life, which was the privilege of seeking remunerative employment and thereby gaining an honest livelihood.    Is it not unquestionably true that but for the interference of appellees, appellant would not have been discharged ?    It is not necessary that such interference should have been malicious in its character.    If it be wrongful, it is equally to be condemned, and just as much in violation of legal right.    In this case we think the interference of the appellee was, in law, malicious, and unquestionably wrongful. The appellant was a man of family, a good workman engaged in a lawful pursuit, performing his duties in an entirely satisfactory manner, without objection in any respect."

The court held that while the judgment was right under the pleadings, the evidence, which showed a contract of the plaintiff to work as a "customs cutter " was to continue " as long as his work proved satisfactory," and that his employer would not have discharged him but for the objection of appellee, showed a cause of action.    And the court say :

" It would be strange indeed, if the law, under such a state of facts as this record exhibits, provided no remedy."

The case was remanded for another trial.

In the very recent case of Moran, cited *supra*, the Massachusetts court refers to the other cases above cited, in that court and others, and held that a declaration was good which charged that the defendant maliciously, etc., caused the plaintiff's discharge from an employment, which did not state that the employment was for a particular time. The court say :

" In the case of a contract of employment, even when the employment is at will, the fact that the employer is free from liability for discharging the plaintiff, does not carry with it immunity to the defendant who has controlled the employer's action to the plaintiff's harm."

Complaint is made of the instruction given by the court of its own motion, mainly because that, inasmuch as the employment of appellee could have been terminated at the will of his employer, the damages could in no event have been more than nominal. What has been said and the authorities cited, we think sufficiently dispose of this contention, and especially in view of the fact that the instruction confines the jury to the giving of compensatory damages only. The evidence amply sustains the amount of the verdict in that regard. It tends to show that but for appellee's discharge he would have earned more during the time between his discharge and the trial of the cause, after deducting all that he actually earned, than he was awarded by the jury. Evidently by inadvertence, the word " plaintiff " was used in the last line of the instruction, instead of the word " defendant." This, we think, could have worked no injury to appellant. We think the giving of this instruction is no ground for a reversal.

The only refused instruction of appellant of which complaint is made, is the one quoted in the statement. It, too, refers to the period of employment of appellee, which has been fully considered.

Being of the opinion that there is no reversible error in the record, the judgment is affirmed.