MICHAEL T. BERRY *vs.* JERRY E. DONOVAN.

Essex.    March 10, 1905. — June 20, 1905.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Malicious Interference.    Actionable Tort.    Labor Union.    Boycotting.*

Inducing an employer to discharge a workman because he does not belong to a certain labor union is actionable in tort as an unjustifiable interference with a contract.

If a manufacturer makes an agreement with a labor union that he will not retain any worker in his employ after receiving notice from the union that such worker is objectionable to the union for any cause, whatever rights this agreement may give the contracting parties in relation to each other, it does not justify an agent of the union in demanding and procuring the discharge of a

workman by the manufacturer because the workman is not a member of the union, and if he does so he is liable to the workman in damages.

It is no defence to an action of tort for maliciously causing the discharge of the plaintiff by his employer that the plaintiff's employment was terminable at the will of his employer, that fact being material only upon the question of damages.

KNOWLTON, C. J.  This is an action of tort brought to recover damages sustained by reason of the defendant's malicious interference with the plaintiff's contract of employment.  The plaintiff was a shoemaker, employed by the firm of Hazen B. Goodrich and Company at Haverhill, Massachusetts, under a contract terminable at will.  At the time of the interference complained of he had been so employed nearly four years.  The defendant was the representative at Haverhill of a national organization of shoe workers, called the Boot and Shoe Workers' Union, of which he was also a member.  The evidence showed that he induced Goodrich and Company to discharge the plaintiff, greatly to his damage.  A few days before the plaintiff's discharge, a contract was entered into between the Boot and Shoe Workers' Union and the firm of Goodrich and Company, which was signed by the defendant for the union, the second clause of which was as follows : " In consideration of the foregoing valuable privileges, the employer agrees to hire as shoe workers, only members of the Boot and Shoe Workers' Union, in good standing, and further agrees not to retain any shoe worker in his employment after receiving notice from the union that such shoe worker is objectionable to the union, either on account of being in arrears for dues, or disobedience of union rules or laws, or from any other cause." The contract contained various other provisions in regard to the employment of members of the union by the firm, and the rights of the firm and of the union in reference to the services of these employees, and the use of the union's stamp upon goods to be manufactured.

The plaintiff was not a member of this union.  Soon after the execution of this contract, the defendant demanded of Goodrich and Company that the plaintiff be discharged, and the evidence tended to show that the sole ground for the demand was that the plaintiff was not a member of the union, and that he persistently declined to join it, after repeated suggestions that he should do so.

At the close of the evidence the defendant asked for the following instructions which the judge declined to give:

" 1. Upon all the evidence in the case, the plaintiff is not entitled to recover.

" 2. Upon all the evidence in the case, the defendant was acting as the legal representative of the Boot and Shoe Workers' Union and not in his personal capacity, and therefore the plaintiff cannot recover.

" 3. The contract between the Boot and Shoe Workers' Union and Hazen B. Goodrich and Company was a valid contract, and the defendant, as the legal representative of the Boot and Shoe Workers' Union, had a right to call the attention of Hazen B. Goodrich and Company, or any member of the firm, to the fact that they were violating the terms of the contract in keeping the plaintiff in their employment after the contract was signed, and insisting upon an observance of the terms of the contract, even if the defendant knew that the observance of the terms of the contract would result in the discharge of the plaintiff from their employment.

"4. The contract referred to was a legal contract, and a justification of the acts of the defendant, as shown by the evidence in this case."

" 6. The defendant cannot be held responsible in this action, unless it appears that the defendant used threats, or some act of intimidation, or some slanderous statements, or some unlawful coercion to or against the employers of the plaintiff, to thereby cause the plaintiff's discharge; and upon all the evidence in the case there is no such evidence, and the plaintiff cannot recover."

The defendant excepted to the refusal, and to the portions of the charge which were inconsistent with the instructions requested. The jury returned a verdict of $1,500 for the plaintiff. These exceptions present the only questions which were argued before us by the defendant.

The primary right of the plaintiff to have the benefit of his contract and to remain undisturbed in the performance of it is universally recognized. The right to dispose of one's labor as he will, and to have the benefit of one's lawful contract, is incident to the freedom of the individual, which lies at the foundation of the government in all countries that maintain the

principles of civil liberty. Such a right can lawfully be interfered with only by one who is acting in the exercise of an equal or superior right which comes in conflict with the other. An intentional interference with such a right, without lawful justification, is malicious in law, even if it is from good motives and without express malice. *Walker* v. *Cronin*, 107 Mass. 555, 562. *Plant* v. *Woods*, 176 Mass. 492, 498. *Allen* v. *Flood*, [1898] A. C. 1, 18. *Mogul Steamship Co.* v. *McGregor*, 23 Q. B. D. 598, 613. *Read* v. *Friendly Society of Operative Stonemasons*, [1902] 2 K. B. 88, 96. *Giblan* v. *National Amalgamated Labourers' Union*, [1903] 2 K. B. 600, 617.

In the present case the judge submitted to the jury, first, the question whether the defendant interfered with the plaintiff's rights under his contract with Goodrich and Company, and secondly, the question whether, if he did, the interference was without justifiable cause. The jury were instructed that, unless the defendant's interference directly caused the termination of the plaintiff's employment, there could be no recovery. The substance of the defendant's contention was, that if he acted under the contract between the Boot and Shoe Workers' Union and the employer in procuring the plaintiff's discharge, his interference was lawful.

This contention brings us to an examination of the contract. That part which relates to the persons to be employed contains, first, a provision that the employer will hire only members of the union. This has no application to the plaintiff's case, for it is an agreement only for the future, and the plaintiff had been hired a long time before. The next provision is, that the employer will not retain in his employment a worker, after receiving notice that he is objectionable to the union, " either on account of being in arrears for dues, or disobedience of union rules or laws, or from any other cause." The first two possible causes for objection could not be applied to persons in the situation of the plaintiff, who were not members of the union or amenable to its laws. As to such persons, the only provision applicable was that the firm would not retain a worker who was objectionable to the union from any cause, however arbitrary the objection, or unreasonable the cause might be. This provision purported to authorize the union to interfere and deprive

any workman of his employment for no reason whatever, in the arbitrary exercise of its power. Whatever the contracting parties may do if no one but themselves is concerned, it is evident that, as against the workman, a contract of this kind does not of itself justify interference with his employment, by a third person who made the contract with his employer. *Curran* v. *Galen*, 152 N. Y. 33. No one can legally interfere with the employment of another, unless in the exercise of some right of his own, which the law respects. His will so to interfere for his own gratification is not such a right.

The judge rightly left to the jury the question whether, in view of all the circumstances, the interference was or was not for a justifiable cause. If the plaintiff's habits, or conduct, or character had been such as to render him an unfit associate, in the shop, for ordinary workmen of good character, that would have been a sufficient reason for interference in behalf of his shopmates. We can conceive of other good reasons. But the evidence tended to show that the only reason for procuring his discharge was his refusal to join the union. The question, therefore, is whether the jury might find that such an interference was unlawful.

The only argument that we have heard in support of interference by labor unions, in cases of this kind, is that it is justifiable as a kind of competition. It is true that fair competition in business brings persons into rivalry, and often justifies action for one's self, which interferes with proper action of another. Such action, on both sides, is the exercise by competing persons of equal conflicting rights. The principle appealed to would justify a member of the union, who was seeking employment for himself, in making an offer to serve on such terms as would result, and as he knew would result, in the discharge of the plaintiff by his employer, to make a place for the new comer. Such an offer, for such a purpose, would be unobjectionable. It would be merely the exercise of a personal right, equal in importance to the plaintiff's right. But an interference by a combination of persons, to obtain the discharge of a workman because he refuses to comply with their wishes, for their advantage, in some matter in which he has a right to act independently, is not competition. In such a case the action taken by

the combination is not in the regular course of their business as employees, either in the service in which they are engaged, or in an effort to obtain employment in other service. The result which they seek to obtain cannot come directly from anything that they do within the regular line of their business as workers competing in the labor market. It can come only from action outside of the province of workingmen, intended directly to injure another, for the purpose of compelling him to submit to their dictation.

It is difficult to see how the object to be gained can come within the field of fair competition. If we consider it in reference to the right of employees to compete with one another, inducing a person to join a union has no tendency to aid them in such competition. Indeed the object of organizations of this kind is not to make competition of employees with one another more easy or successful. It is rather, by association, to prevent such competition, to bring all to equality, and to make them act together in a common interest. Plainly then, interference with one working under a contract, with a view to compel him to join a union, cannot be justified as a part of the competition of workmen with one another.

We understand that the attempted justification rests entirely upon another kind of so called competition, namely, competition beween employers and the employed, in the attempt of each class to obtain as large a share as possible of the income from their combined efforts in the industrial field. In a strict sense, this is hardly competition. It is a struggle or contention of interests of different kinds, which are in opposition, so far as the division of profits is concerned. In a broad sense, perhaps the contending forces may be called competitors. At all events, we may assume that, as between themselves, the principle which warrants competition permits also reasonable efforts, of a proper kind, which have a direct tendency to benefit one party in his business at the expense of the other. It is no legal objection to action whose direct effect is helpful to one of the parties in the struggle that it is also directly detrimental to the other. But when action is directed against the other, primarily for the purpose of doing him harm and thus compelling him to yield to the demand of the actor, and this action does not directly affect the

property, or business, or status of the actor, the case is different, even if the actor expects to derive a remote or indirect benefit from the act.

The gain which a labor union may expect to derive from inducing others to join it, is not an improvement to be obtained directly in the conditions under which the men are working, but only added strength for such contests with employers as may arise in the future. An object of this kind is too remote to be considered a benefit in business, such as to justify the infliction of intentional injury upon a third person for the purpose of obtaining it. If such an object were treated as legitimate, and allowed to be pursued to its complete accomplishment, every employee would be forced into membership in a union, and the unions, by a combination of those in different trades and occupations, would have complete and absolute control of all the industries of the country. Employers would be forced to yield to all their demands, or give up business. The attainment of such an object in the struggle with employers would not be competition, but monopoly. A monopoly, controlling anything which the world must have, is fatal to prosperity and progress. In matters of this kind the law does not tolerate monopolies. The attempt to force all laborers to combine in unions is against the policy of the law, because it aims at monopoly. It therefore does not justify causing the discharge, by his employer, of an individual laborer working under a contract. It is easy to see that, for different reasons, an act which might be done in legitimate competition by one, or two, or three persons, each proceeding independently, might take on an entirely different character, both in its nature and its purpose, if done by hundreds in combination.

We have no desire to put obstacles in the way of employees, who are seeking by combination to obtain better conditions for themselves and their families. We have no doubt that laboring men have derived and may hereafter derive advantages from organization. We only say that, under correct rules of law, and with a proper regard for the rights of individuals, labor unions cannot be permitted to drive men out of employment because they choose to work independently. If disagreements between those who furnish the capital and those who perform the labor

employed in industrial enterprises are to be settled only by industrial wars, it would give a great advantage to combinations of employees, if they could be permitted, by force, to obtain a monopoly of the labor market. But we are hopeful that this kind of warfare soon will give way to industrial peace, and that rational methods of settling such controversies will be adopted universally.

The fact that the plaintiff's contract was terminable at will, instead of ending at a stated time, does not affect his right to recover. It only affects the amount that he is to receive as damages. *Moran* v. *Dunphy*, 177 Mass. 485, 487. *Perkins* v. *Pendleton*, 90 Maine, 166, 176. *Lucke* v. *Clothing Cutters & Trimmers' Assembly*, 77 Md. 396. *London Guarantee & Accident Co.* v. *Horn*, 101 Ill. App. 355; *S. C.* 206 Ill. 493.

The conclusion which we have reached is well supported by authority. The principle invoked is precisely the same as that which lies at the foundation of the decision in *Plant* v. *Woods*, 176 Mass. 492. In that case, although the power that lies in combination and the methods often adopted by labor unions in the exercise of it were stated with great clearness and ability, the turning point of the decision is found in this statement on page 502: " The necessity that the plaintiffs should join this association is not so great, nor is its relation to the rights of the defendants, as compared with the right of the plaintiffs to be free from molestation, such as to bring the acts of the defendants under the shelter of the principles of trade competition." *Carew* v. *Rutherford*, 106 Mass. 1. *Walker* v. *Cronin*, 107 Mass. 555, and the other cases cited in *Plant* v. *Woods*, *ubi supra*, as well as the later case of *Martell* v. *White*, 185 Mass. 255, all tend to support us in our decision.

We long have had a statute forbidding the coercion or compulsion by any person of any other " person into a written or verbal agreement not to join or become a member of a labor organization as a condition of his securing employment or continuing in the employment of such person." R. L. c. 106, § 12. The same principle would justify a prohibition of the coercion or compulsion of a person into a written or verbal agreement to join such an organization, as a condition of his securing employment, or continuing in the employment of another person.

The latest English cases, which explain and modify *Allen* v. *Flood*, [1898] A. C. 1, seem in harmony with our conclusion. *Giblan* v. *National Amalgamated Labourers' Union*, [1903] 2 K. B. 600. *Quinn* v. *Leathem*, [1901] A. C. 495. In the first of these it was held that a labor union could not use its power to deprive one of employment, in order to compel him to pay a debt in which the union was interested. The case of *Curran* v. *Galen*, 152 N. Y. 33, in the decision of which the judges of the court of appeals were unanimous, fully covers the present case. The principle involved in each of the two cases is the same, and the language of the opinion in that case, in its application to this, is decisive. From the decision of *National Protective Assoc.* v. *Cumming*, 170 N. Y. 315, three of the seven judges dissented, and the result is to leave the law of New York in some uncertainty. The majority distinguished that case from *Curran* v. *Galen*, just referred to, and held that their decision was not inconsistent with it. They seem to have treated the arrangement to exclude persons not belonging to the union as entered into for legitimate purposes, having reference to actual or probable conditions in the employment; while the minority treated it as similar to the arrangement that appears in *Curran* v. *Galen*. See also *Jacobs* v. *Cohen*, 90 N. Y. Supp. 854; *Mills* v. *United States Printing Co.* 99 App. Div. (N. Y.) 605.

The law of Illinois is in accord with our conclusion. In *London Guarantee & Accident Co.* v. *Horn,* 101 Ill. App. 355; *S. C.* 206 Ill. 493, it was held that a refusal of a workman to accede to the request of another in a matter affecting the pecuniary interest of the other would not justify the procurement of his discharge from the employment in which he was engaged, under a contract terminable at will. See also, for kindred doctrines, *Doremus* v. *Hennessy*, 176 Ill. 608; *Christensen* v. *People*, 114 Ill. App. 40; *Mathews* v. *People*, 202 Ill. 389; *Erdman* v. *Mitchell*, 207 Penn. St. 79; *Perkins* v. *Pendleton*, 90 Maine, 166. Other cases bearing more or less directly upon the general subject are *Lucke* v. *Clothing Cutters & Trimmers' Assembly*, 77 Md. 396; *Holder* v. *Cannon Manuf. Co.* 135 N. C. 392; *Chipley* v. *Atkinson*, 23 Fla. 206; *Blumenthal* v. *Shaw*, 77 Fed. Rep. 954; *Barr* v. *Essex Trades Council*, 8 Dick. 101; *Jersey City Printing Co.* v. *Cassidy*, 18 Dick. 759; *Crump* v. *Commonwealth*, 84 Va. 927; *Old*

*Dominion Steamship Co.* v. *McKenna,* 30 Fed. Rep. 48 ; *Brown* v. *Jacobs' Pharmacy Co.* 115 Ga. 429 ; *Bailey* v. *Master Plumbers,* 103 Tenn. 99 ; *Delz* v. *Winfree,* 80 Tex. 400. It will be seen that in the different courts there is considerable variety and some conflict of opinion.

We hold that the defendant was not justified by the contract with Goodrich and Company, or by his relations to the plaintiff, in interfering with the plaintiff's employment under his contract. How far the principles which we adopt would apply, under different conceivable forms of contract, to an interference with a workman not engaged, but seeking employment, or to different methods of boycotting, we have no occasion in this case to decide.

The defendant contends that the judge erred in his instruction to the jury, in response to the defendant's special request at the close of the charge. The judge said, in substance, that if the defendant caused the firm to discharge the plaintiff, by giving the members to understand that, unless they discharged him, they " would be visited with some punishment, under the contract or otherwise, then that interference would not be justifiable." This instruction, taken literally and alone, would be erroneous. Some grounds of interference would be justifiable while others would not. But considering the instruction in connection with that which immediately preceded it, and with other parts of the charge, it is evident that the judge was directing the attention of the jury to what would constitute an interference, not to what would justify an interference. He had just told them that, if all the defendant did was to call the attention of the firm to the provision of the contract, and the firm then, of their own motion, discharged the plaintiff, the defendant would not be liable. He then pursued the subject with some elaboration, and ended as stated above. Instead of saying, " then that interference would not be justifiable," he evidently meant to say, " then that would be interference which would create a liability, unless it was justifiable." Taking the charge as a whole, we think the jury were not misled by the inaccuracy of this statement.

*Exceptions overruled.*

*H. F. Hurlburt,* (*J. J. Ryan* with him,) for the defendant.
*J. J. Winn,* for the plaintiff.