HARRY E. CARNES v. ST. PAUL UNION STOCKYARDS COMPANY.[1]

No. 24,870.

October 16, 1925.

**At common law person who is prevented from obtaining employment by wrongful interference of another may recover damages from the intermeddler—Malice in sense of ill-will or spite is not essential.**

1. At common law, one who has been prevented from securing employment by reason of the wrongful and malicious interference of another may recover damages from the wrongdoer. This principle is applicable to such interference if it prevents the formation of a contract, as well as to interference with existing contractual relations.

[1]Reported in 205 N. W. 630, 206 N. W. 396.

"Malice," as the term is used in this class of cases, means nothing more than the intentional doing of an injurious act without justification or excuse.

**Error to dismiss action when plaintiff made prima facie case for recovery of damages at common law.**

2.  Upon a showing that defendant had excluded plaintiff from the public stockyards at South St. Paul, which it owns, and had refused to permit commission men who did business there to employ him as a yard salesman, and that he had been unable to secure such employment by reason of defendant's interference, plaintiff made a prima facie case for the recovery of damages at common law, and it was error to grant a motion for dismissal. The showing made by plaintiff necessitated the production by defendant of evidence to justify or excuse the conduct of which plaintiff complained.

1.  See Torts, 38 Cyc. pp. 502, 511.
2.  See Torts, 38 Cyc. p. 540.

1.  See note in 62 L. R. A. 714.  15 R. C. L. pp. 70, 71; 3 R. C. L. Supp. p. 419; 5 R. C. L. Supp. p. 828.

Action in the district court for Dakota county to restrain interference with plaintiff's employment and for damages. The case was tried before Schultz, J., who dismissed the action. Plaintiff appealed from an order denying his motion for a new trial. Reversed.

*Patrick J. Ryan*, for appellant.

*D. L. Grannis* and *A. J. Rockne*, for respondent.

LEES, C.

In June, 1923, James E. Gibbons and Jessie C. Carnes, doing business under the name of Gibbons & Carnes, were buying and selling live stock on a commission basis at defendant's stockyards. Jessie C. Carnes is plaintiff's wife. Plaintiff alleges that he was employed by Gibbons & Carnes as a salesman, while defendant aleges that plaintiff was really a member of the firm and in the active management of the business.

Gibbons and his partner were members of the South St. Paul Live Stock Exchange until June 6, when they were suspended from membership for 30 days and fined $500. The exchange is an organization separate and distinct from defendant. It is composed of commission men who do business at the South St. Paul stockyards, but membership in the Exchange is not a condition of the right to deal in live stock in the yards.

Under a contract with defendant, Gibbons & Carnes were permitted to do business in the yards, subject to rules and regulations prescribed by the defendant, and subject to defendant's right to cancel the contract on 30 days' notice. On June 12, 1923, defendant notified plaintiff that he and the members of the firm would thereafter be excluded from the yards. Subsequently this action was brought to enjoin defendant from excluding plaintiff from the yards and to recover damages for preventing him from securing employment therein as a salesman.

The answer alleged that the firm of Gibbons & Carnes was a market agency, as defined in the Federal Packers & Stockyards Act of August 15, 1921, and had registered with the Secretary of Agriculture in compliance with the act; that the firm was suspended by the Live Stock Exchange for misconduct in business transactions with shippers of live stock; that this was the reason for excluding plaintiff from the yards; that it was defendant's intention to continue to exclude him therefrom; that, when Gibbons & Carnes applied for and obtained permission to operate in the yards, the fact that they had been guilty of business irregularities and misconduct was unknown to defendant and defendant had no knowledge thereof until after they were suspended by the Live Stock Exchange.

The case was tried by the court with a jury. In the course of the trial it was stipulated that defendant refused to enter into contracts permitting commission men to do business at its yards if they gave employment to plaintiff as a yard salesman. When plaintiff rested, defendant moved for a dismissal, the motion was granted, a new trial denied, and plaintiff has appealed.

In his reply brief plaintiff denominates this action as one at common law, founded on defendant's wrongful interference with the employment of plaintiff by commission men who do business in defendant's yards. Defendant's counsel do not dispute that this is the nature of the action, but counsel for both parties have referred to the Packers & Stockyards Act in their briefs and in their oral arguments.

The act is pertinent insofar as it discloses the policy of Congress. It places stockyards and commission men under the supervision and control of the Secretary of Agriculture, who is given power to prevent discrimination and unfair practices, to issue cease and desist orders and to apply to the courts to compel obedience thereof. Manifestly Congress believed that there had been abuses which needed correction, and that authority to curb unfair practices should be conferred upon some governmental agency. However, this does not necessitate the conclusion that, if defendant wrongfully excluded plaintiff from its yards, the only course open to him was to apply to the Secretary of Agriculture for redress, for the act expressly declares that it is not an abridgment of but an addition to the common law remedies available to one injured by conduct condemned by the act. The inquiry then is whether plaintiff's evidence, coupled with the admissions in defendant's answer, made a prima facie case of actionable wrong at common law.

The courts hold with substantial unanimity that the wrongful and malicious interference by a stranger with existing contract relations between others, which causes one of the parties to breach the contract, is a tort, and that the injured party may recover damages therefor. Bacon v. St. Paul Union Stockyards Co. 161 Minn. 522, 201 N. W. 326, is a case in which this principle was applied. It was there held, citing numerous decisions of this court, that a complaint similar to the one in the case at bar stated a cause of action.

It is a legal principle of general application that one who has been prevented from securing employment by reason of the wrong-

ful and malicious interference of another may recover damages from the wrongdoer. 2 Cooley, Torts, p. 587.

The principle was mentioned in Joyce v. G. N. Ry. Co. 100 Minn. 225, 110 N. W. 975, 8 L. R. A. (N. S.) 756, and is discussed in Brennan v. United Hatters, 73 N. J. Law, 729, 65 Atl. 165, 9 L. R. A. (N. S.) 254, 118 Am. St. 727, 9 Ann. Cas. 698; Graham v. St. Charles St. R. Co. 47 La. 214, 16 So. 806, 27 L. R. A. 416, 49 Am. St. 366; Delz v. Winfree, Norman & Pearson, 80 Tex. 400, 16 S. W. 111, 26 Am. St. 755; and Hundley v. L. & N. R. Co. 105 Ky. 162, 48 S. W. 429, 63 L. R. A. 289, 88 Am. St. 298.

In the Joyce case the action was brought to recover damages for personal injuries and damages for wrongfully preventing plaintiff from obtaining employment. After referring to the general rule, the court said:

"Some eminent judges and courts have insisted with persuasive argument that such wrongful interference for the purpose of preventing the formation of contracts is equally actionable. * * * The precise question has never come before this court, though we had an analogous case in Gray v. Building Trades Council, 91 Minn. 171. * * * We there held, as respects a boycott, that it was immaterial whether contract relations actually existed between the person boycotted and his customers; that it was equally unlawful to prevent him from obtaining customers with whom he could contract, as to interrupt existing relations, and such is the law in other states."

These observations were followed by the statement that because of the provisions of the blacklisting statute, section 5097, R. L. 1905 (section 10378, G. S. 1923), it was unnecessary to inquire whether the common law does or does not afford a remedy against an intermeddler in cases where he does not interfere with existing contract relations, but only prevents their formation.

The Joyce case clearly indicates that the court was inclined to adopt the view that a wrongful interference with the formation of a contract was no less actionable than a wrongful interference with

an existing contract, and we have found no well-considered case in which the contrary view was adopted.

In Berry v. Donovan, 188 Mass. 353, 74 N. E. 603, 5 L. R. A. (N. S.) 899, 108 Am. St. 499, 3 Ann. Cas. 738, the court said:

"The right to dispose of one's labor as he will, and to have the benefit of one's lawful contract, is incident to the freedom of the individual. * * * Such a right can lawfully be interfered with only by one who is acting in the exercise of an equal or superior right which comes in conflict with the other. An intentional interference with such a right, without lawful justification, is malicious in law, even if it is from good motives and without express malice."

It being the law that a man who has employment and is discharged by his employer solely by reason of the wrongful interference of another, sustains an injury for which the intermeddler is liable, it follows logically that a man who is prevented from obtaining employment by the wrongful interference of another may also recover damages from the intermeddler. There is no substantial difference between the loss of employment and the inability to secure employment when each is caused by the wrongful interference of a third person, for in either case the person injured is prevented from enjoying the fruits of his labor.

The term "malice," as used in the class of cases mentioned, means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or otherwise stated the wilful violation of a known right. Whether a wrongdoer's motive in interfering is to benefit himself, or to gratify his spite by working mischief to another, is immaterial, malice in the sense of ill-will or spite not being essential. Numerous cases thus defining malice are collected in 15 R. C. L. pp. 56 and 57.

The courts generally hold that a man's occupation or means of gaining a livelihood is his property, and that for every injury thereto which is suffered by reason of the wrongful or malicious act of another, an action for damages will lie.

The doctrine that an act, which is legal when done without malice, cannot become legally wrong if it is done maliciously or without

reasonable cause, is not absolute, for there may be an unlawful use of a legal right. U. S. Fidelity & G. Co. v. Millonas, 206 Ala. 147, 89 So. 732, 29 A. L. R. 520. Tuttle v. Buck, 107 Minn. 145, 119 N. W. 946, 22 L. R. A. (N. S.) 599, 131 Am. St. 446, 16 Ann. Cas. 807, seems to favor this doctrine. Other cases in point are collected in 15 R. C. L. at p. 70.

We have reached the conclusion that the vital question in the case at bar is whether there was justification or excuse for the acts with which defendant is charged.

The courts have not attempted to formulate a rule by which justification or lack of justification may be determined, but have said that in general the issue is largely one of fact for the jury, the standard being reasonable conduct under all the circumstances of the case. Huskie v. Griffin, 75 N. H. 345, 74 Atl. 595, 27 L. R. A. (N. S.) 966, 139 Am. St. 718; Berry v. Donovan, supra.

The substance of the argument of defendant's counsel in support of the contention that defendant was justified in all that it did is this: Defendant has an interest in the character of the South St. Paul commission men and their employes. If unreliable or unscrupulous men are permitted to enter its yards to represent buyers or sellers of live stock, its business will suffer, because shippers judge defendant by the reputation of the commission men and their employes whom it admits to the yards, which defendant controls and owns in fee. The commission men and their employes are mere licensees, hence the privilege of using the yards may be withdrawn from them for any cause which defendant deems sufficient.

The argument is forceful and is supported by the citation of numerous authorities, which we have examined. Godbout v. St. Paul Union Depot Co. 79 Minn. 188, 81 N. W. 835, 47 L. R. A. 532, is one of the cases upon which defendant greatly relies, but clearly it is not controlling, for it dealt with a state of facts substantially different from those presented here.

We think counsel fail to give sufficient weight to the fact that we are not here concerned with a business of a private nature. It must be remembered that defendant's business is affected with a

public interest and that its property is devoted to use as a public stockyards. Stafford v. Wallace, 258 U. S. 495, 42 Sup. Ct. 397, 66 L. ed. 735, 23 A. L. R. 229; State v. Rogers & Rogers, 149 Minn. 151, 182 N. W. 1005; Grisim v. South St. Paul Live Stock Ex. 152 Minn. 271, 188 N. W. 729. The commission men who do business in a public stockyard are market agencies under the Packers & Stockyards Act, and shippers are entitled to the benefit of their services. Moreover, the firm of Gibbons & Carnes had been duly admitted to the yards, and the firm which subsequently offered to give plaintiff employment was also admitted. Defendant must have been satisfied with plaintiff's character and reputation when it first admitted him to its yards, and it would see that under the circumstances it should offer some explanation for its change of front in excluding him therefrom permanently and unconditionally.

But undoubtedly defendant has lawful interests to protect and may properly refuse to admit to its yards a commission man, or one of his employes, if there is justification or valid excuse for the refusal. As was said in the Joyce case, defendant might insist that no unworthy persons should be employed upon its property, and, if that was the basis of its action, no liability exists. In other words, defendant is not merely an officious intermeddler in plaintiff's affairs, with no legitimate interest to serve. Such an intermeddler can rarely, if ever, justify or excuse his conduct. But one standing in the position of defendant has rights which it may assert by excluding from its property a man of doubtful reputation, or one who has been guilty of misconduct in his dealings with defendant's patrons.

What would justify exclusion we do not now attempt to decide. We do say however that, because defendant had a legitimate interest to protect in that it is the owner of the stockyards and responsible for their efficient management and proper use, particularly by local market agencies, it has a liberty of action much wider than that of a third party having no such interest or duty in the premises, and a discretion of management not lightly to be interfered with by the judiciary, who have none of the regulatory and administrative

power, legislative in origin, which has been assigned by Congress to the Secretary of Agriculture.

The evidence and the admissions in the amended answer conclusively establish defendant's active interference to prevent plaintiff's employment by a certain commission firm as a salesman in defendant's yards. In the cross-examination of the plaintiff, defendant attempted to obtain admissions which would justify its action, but the showing was not so clear as to compel the jury to find that there was justification, and no evidence to explain the stand it took was offered by defendant. We are of the opinion that the jury might have found from the evidence introduced that defendant's actions were malicious in a legal sense and that plaintiff was entitled to damages in some amount. A prima facie cause of action was made out, but recovery will be defeated if defendant shows that its acts were justified, the burden of proving justification being upon the defendant. Connors v. Connolly, 86 Conn. 641, 86 Atl. 600, 45 L. R. A. (N. S.) 564.

We hold that when plaintiff rested he had made a showing which made it necessary for defendant to produce evidence to justify the acts of which plaintiff complains, and that the motion to dismiss should have been denied.

Order reversed.

On December 11, 1925, the following opinion was filed:

PER CURIAM.

The court has considered the contention in respondent's petition for a rehearing and in its brief, in support of the petition, that in determining the questions presented by this appeal the court disregarded the Fifth and Fourteenth Amendments to the Constitution of the United States, and that the effect of the decision is to deprive respondent of the right to refuse to enter into contract relations with others and of control of its property, without due process of law.

After due consideration of these constitutional questions, the court adheres to the conclusions stated in the original opinion and

holds that the respondent has not been deprived of the protection afforded by the constitutional provisions above mentioned.

It is therefore ordered that the petition for a rehearing be denied.