Argued December 19, 1935; affirmed January 21, 1936

# DeMARAIS *v.* STRICKER ET AL.

(53 P. (2d) 715)

*Eugene Marsh,* of McMinnville (Vinton, Marsh & Marsh, of McMinnville, and Wilbur, Beckett, Howell & Oppenheimer, of Portland, on the brief), for appellants.

*Alfred P. Kelley,* of Portland (Teal, Winfree, McCulloch, Shuler & Kelley and Earl C. Bronaugh, Jr., all of Portland, on the brief), for respondent.

KELLY, J. At all times herein mentioned, plaintiff was a duly licensed embalmer and defendants comprised the State Embalmers' Examining Board. On and prior to the 8th day of September, 1933, L. L. Bruning Mission Mortuary, Inc., a corporation, and one A. F. Bierman were associated together in the conduct of a funeral business in Oregon City, under the assumed name of Oregon City Funeral Home. Plaintiff was employed as an embalmer and as manager of said funeral business of the Oregon City Funeral Home.

That prior to the 8th day of September, 1933, said associates in the business of Oregon City Funeral Home had made application to the defendants, acting as the State Embalmers' Examining Board, for a license under the laws of the state of Oregon to conduct the business of funeral directing in Oregon City.

It is contended by plaintiff, and there is substantial testimony to support the contention, that, as a condition prerequisite to the issuance of a funeral director's license to the Oregon City Funeral Home, defendants demanded that said Oregon City Funeral Home should discharge plaintiff and agree not to reemploy him in said business; and that, because of this demand by defendants, said Oregon City Funeral Home discharged plaintiff and ever since have refused to reemploy him.

The trial court overruled a general demurrer to plaintiff's amended complaint and also overruled defendants' motions for involuntary nonsuit and for a directed verdict in favor of defendants. Error is predicated upon each of these rulings of the trial court.

In support of these assignments of error, it is urged:

(1) That the defendants, as the Oregon State Embalmers' Examining Board, constitute a quasi-judicial body with discretionary powers.

(2) A quasi-judicial officer, while acting in the scope of his jurisdiction, is protected from civil liability though his actuating motive may be malicious.

(3) That a judicial or quasi-judicial officer is not liable for acts done in his judicial capacity where there is not a clear absence of all jurisdiction over the subject matter and person, even though such acts constitute an excessive exercise of jurisdiction or involve a decision that the officer had jurisdiction over the particular case where in fact he had none.

(4) The defendants, acting as the State Embalmers' Examining Board, in refusing to grant, or in granting a license, to the Oregon City Funeral Home, were acting within the scope of their authority and jurisdiction.

(5) A third party is not liable for interference with one's employment where an employee's dicharge complained of was attributable to the threat of the defendant to exercise a legal right, which, if carried into execution, would also have resulted in the loss of plaintiff's employment, for which defendant could not have been held liable, since the loss of employment would have been due to the exercise of a legal right and the motive for the exercise of which would not be a matter open to inquiry.

(This proposition (5) may mean that defendants' alleged nonliability rests upon the ground that in making a threat to refuse plaintiff's employer a license, defendants exercised a legal right; or, it may mean that defendants are not liable because plaintiff's employer exercised a legal right in discharging plaintiff.)

(6) Where a statute declares that it is unlawful to conduct a certain business without a license, and imposes a penalty for violation, contracts, made in pursuance to the carrying on of such unlawful business, are void, particularly so where the statute is a police regulation.

The first four of the above-stated principles may be conceded. The fifth, however, is not available to defendants in the state of this record.

■ At common law, one prevented from securing employment through wrongful and malicious interference of another may recover damages, and this principle applies to interference preventing the formation of a contract as well as interference with existing contrac-

tual relations, and "malice", as used in such case, means nothing more than the intentional doing of an injurious act without justification or excuse: *Carnes v. St. Paul Union Stock Yards Co.*, 164 Minn. 457 (205 N. W. 630, 206 N. W. 396).

The justification claimed by defendants herein is that they were acting in their official capacity as quasi-judicial officers and therefore had a legal right to make the demand that plaintiff be dismissed from the service of the Oregon City Funeral Home and be not reemployed.

■ Defendants were authorized to issue, renew, suspend, revoke and refuse to issue or renew funeral directors' licenses: Sections 4, 6, 7, and 9, Chapter 295, Oregon Laws 1931, p. 521, et seq. No complaint is made because of such action. They were not authorized to require any applicant for a license to discharge an employee and agree not to reemploy him. In making such an order or demand, defendants were without any jurisdiction. In doing so, they did not merely exercise jurisdiction erroneously; they acted without any jurisdiction. In proposing to withhold the funeral directors' license, unless plaintiff should be permanently discharged, defendants did not exercise any legal right.

In *Shaw v. Moon et al.*, 117 Or. 558 (245 P. 318, 45 A. L. R. 600), a justice of the peace was held to have acted without any jurisdiction in issuing a search warrant where no affidavit had been filed upon which to base an order for a search warrant.

In *Sweeney v. Young*, 82 N. H. 159 (131 Atl. 155, 42 A. L. R. 757), it is held that—

"In respect to jurisdiction, protection for judicial acts is withdrawn when they are outside the tribunal's jurisdiction."

In *Spalding v. Vilas*, 161 U. S. 483 (16 S. Ct. 631, 40 L. Ed. 780), plaintiff, an attorney, sought to recover from the attorney general because of a circular sent from the attorney general's department advising claimants for adjustment of salary, earned as postal employees, that it was not necessary for them to employ an attorney to present their claims. The court was careful to say:

"He [the attorney general] did not, by his circular, advise claimants that they could disregard any valid contract made by them with attorneys. Claimants could not have understood him as recommending a violation of the legal rights of others."

In *DeBolt v. McBrien*, 96 Neb. 237 (147 N. W. 462), the rule is announced that if an officer performs an act in the exercise of his office, which it is plainly his duty to perform, his motives are not subject to inquiry in an action for damages. In the case at bar, it was not plainly, nor at all, the duty of defendants to require plaintiff's permanent dismissal by the Oregon City Funeral Home.

In *Raycroft v. Tayntor*, 68 Vt. 219 (35 Atl. 53, 33 L. R. A. 225, 54 Am. St. Rep. 882), one Libersont employed plaintiff. Defendant employed Libersont. Both contracts for employment were terminable at will. Defendant threatened to discharge Libersont if Libersont did not discharge plaintiff. Libersont discharged plaintiff. The court held that plaintiff could not recover from defendant because defendant had a legal right to do what he threatened to do. In the case at bar, defendants had no right to withhold a license from the Oregon City Funeral Home on the ground that plaintiff was employed by them or because they refused to discharge and not reemploy him. In other

words, in the case at bar, defendants could withhold a license only on grounds contemplated by the statute, and not arbitrarily and without any reason; but in the Raycroft-Tayntor case defendant could discharge Libersont without any reason whatever.

The same distinction is to be observed between the case at bar and *Orr v. Home Mutual Ins. Co.*, 12 La. Ann. 255 (68 Am. Dec. 770). There, defendants refused to insure goods on any steamer on which plaintiff might be employed. The right of the insurers to refuse to insure was absolute.

In *Bradley v. Fisher*, 80 U. S. 335 (13 Wall. 335, 20 L. Ed. 646), the defendant, as a judge of a court, had legal right to disbar plaintiff from practicing in the court over which defendant presided. The action was based upon damages because of such disbarment.

In *Rains v. Simpson*, 50 Tex. 495 (32 Am. Rep. 609), defendants, as justices of the peace and ex-officio county court, had a legal right to refuse to approve a tax collector's bond. To render that case applicable to the facts in the case at bar, it should be one instituted by a discharged deputy where defendants approved the tax collector's bond on condition that he discharge such deputy and agree not to reemploy him.

■ The participation with the coroner in the alleged practice on his part of placing bodies, coming under his official supervision, with the Oregon City Funeral Home where near relatives were thereafter charged by the funeral home for services not otherwise authorized as a condition for surrendering the deceased to some other undertaker, might have been sufficient ground for refusing a license to that funeral home; but it could not have the effect of conferring jurisdiction upon the licensing board to demand a perpetually

continuing interdiction against the funeral home employing plaintiff.

"The courts have not attempted to formulate a rule by which justification or lack of justification may be determined, but have said that in general the issue is largely one of fact for the jury; the standard being reasonable conduct under all the circumstances of the case."

*Carnes v. St. Paul Union Stock Yards Co.,* supra, citing *Huskie v. Griffin,* 75 N. H. 345 (74 Atl. 595, 27 L. R. A. (N. S.) 966, 139 Am. St. Rep. 718) ; *Berry v. Donovan,* 188 Mass. 353 (74 N. E. 603, 5 L. R. A. (N. S.) 899, 108 Am. St. Rep. 499, 3 Ann. Cas. 738). In his instructions to the jury in the instant case, the learned trial judge applied the standard thus approved.

■ The sixth principle for which defendants contend, namely, that because the Oregon City Funeral Home was not licensed as a funeral director, a contract with plaintiff to carry on such business was void, does not apply to the facts in the case. The Oregon City Funeral Home had been licensed as a funeral director during the time of plaintiff's nonemployment. Plaintiff had been licensed as an embalmer during all of that time, hence, prevention by defendants of the employment of plaintiff by the Oregon City Funeral Home would be interference with the execution of a potentially valid contract of employment.

■ In order to render an act, which has the effect to interfere with another's employment, a violation of his rights, there must be, (a) an intention to bring about the particular result, (b) the use of unlawful means, and (c) the absence of justification.

The intention on the part of appealing defendants to bring about plaintiff's permanent discharge is supported by the evidence, which, in turn, supports the

finding of the jury. The absence of justification is also shown by the record.

When it is said that there must also be the use of unlawful means, this does not have reference to means in themselves unlawful; but to those which are unlawful as being prima facie an invasion of plaintiff's right. There are cases where the right invaded rests in contract, and there are other cases where the right infringed upon is the right to be employed. In the case at bar, both of those rights are involved.

■ While it is true that the Oregon City Funeral Home was not a licensed funeral director when plaintiff was in its employment, nevertheless, plaintiff testified that he was unaware of the fact that his employers were not so licensed. Recovery from an employer may be had for services rendered in an occupation which is illegal because a license is required and none has been procured unless the employee knew that the employer had no license, for, while the employee is bound to know that to make the business legal the employer must have a license, the employee's mistake in thinking that his employer had such a license, when in fact the employer had none, is a mistake of fact and not of law: 13 C. J. Subject, Contract, p. 516, Sec. 474(2), note 65, citing *Roys v. Johnson*, 7 Gray (Mass.) 162; *Emery v. Kempton*, 2 Gray (Mass.) 257.

■ Where the right infringed is the right to be employed (no contract right being in question), the courts disagree as to whether mere persuasion may constitute an unlawful means. Where the view is taken that persuasion, even though exercised in bad faith, is not actionable, the unlawfullness of the means is determined by their effect upon the will of the employer. Where persuasion is not actionable, it is not enough to impose liability (assuming the other elements of

liability to exist) that, had not the act been done, the employer would have hired the plaintiff or retained him in his employment. There must be something more than a mere influence acting upon his will. The means used must be such as to preclude the employer's exercise of his free volition. It is not sufficient to offer him a choice; he must be so constrained that he does not feel free to exercise an independent judgment. It is perhaps a sufficiently comprehensive description of such means to say that they are such as to put him in fear of loss or bodily harm to himself, or to some one for whom he has affection or regard. The lawfulness of the means in this regard must be tested by their effect upon a reasonably prudent, reasonably courageous and not unreasonably sensitive man. In theory, at least, the intrinsic unlawfulness of the means used is irrelevant to the question of their coercive effect upon the will of another: Vol. 7 Labatt's Master & Servant, (2d Ed.) 8245, § 2666. From the foregoing, it will be noted that the legal right of the employer to discharge does not avail as a defense in behalf of a third party, whose interference is such that the employer does not feel free to exercise his independent judgment.

The record supports plaintiff's claim when tested by the foregoing principles.

Finally, it is urged by appealing defendants that error was committed in refusing to receive in evidence the findings made on August 23, 1932, by defendants, upon a hearing which resulted in the refusal of defendants to grant a license to the Oregon City Funeral Home. We know of no rule of evidence which would render these findings admissible.

The judgment of the circuit court is affirmed.

BEAN, RAND and ROSSMAN, JJ., concur.