[No. 5896.]

## WARFORD v. THE PEOPLE.

1. **Practice in Criminal Cases—Homicide—Evidence—Intent and Malice.**

On account of the conditions existing in a certain community, the county officers and the committees of the political parties agreed that only one deputy sheriff and one constable should be allowed at each voting precinct to preserve order and enforce the law. Defendant, in attempting to carry out the instructions of his superior officer to remove the deceased and another, who were acting as constables, from the hundred-foot limit, upon the drawing of a revolver by deceased, shot and killed him. Held, that on a trial for such homicide, defendant should have been allowed to show the nature of the instructions received from such superior officer for the purpose of showing intent and absence of malice, even though such superior officer exceeded his authority by attempting to carry out a void agreement.—P. 207.

2. **Same—Self-defense—Threats of Decedent—Admissibility.**

Where there is any evidence tending to show self-defense, proof of threats communicated or uncommunicated is admissible. —P. 208.

3. **Same.**

Where, on a trial for homicide, it was shown that on election day the defendant, a deputy sheriff, had requested decedent and another, who were constables, to move outside the hundred-foot limit in accordance with instructions given by defendant's superior officer, testimony was admissible that defendant had been told that deceased and the other constable had made threats against him, that they were dangerous men and likely to cause trouble, and that he should be careful and take no chances with them.—P. 209.

*Error to the District Court of Teller County.*
*Hon. William P. Seeds, Judge.*

James Warford was convicted of murder, and brings error.          *Reversed.*

Mr. J. McD. LIVESAY, Mr. S. D. CRUMP, Mr. THOS. C. BROWN, and Mr. E. M. NOURSE, for plaintiff in error.

Mr. N. C. MILLER, attorney general, for the people.

Plaintiff in error was convicted of the murder of Isaac T. Leabo. The homicide occurred at polling precinct No. 48 in the city of Goldfield, Teller county, state of Colorado, on election day, November 8, 1904. Owing to the conditions existing in the Cripple Creek district (which includes election precinct No. 48), following the strike which culminated in the explosion at the Independence depot on June 6, 1904, it was deemed necessary by the law-abiding citizens and the officials of Teller county to take extraordinary precautions to prevent disturbances on election day, and to this end the sheriff of the county, the board of county commissioners, and the central committees of the different parties entered into an agreement that on election day there should be at each polling place one deputy sheriff and one constable only to preserve order and see to the enforcement of the law. This understanding seems to have been observed in all the precincts in the county except in precinct No. 48, where the judges of election designated Leabo, Miller and another to act as constables therein, who assumed to act as such officers.

The plaintiff in error Warford and Thomas C. Brown, who were at the time duly and legally appointed and acting deputy sheriffs, were at Goldfield subject to the orders of one Jack Allen, a deputy sheriff who had been given charge of the deputy sheriffs in that part of the county, with authority to direct what should be done. In the forenoon of that day, Leabo and Miller were at the polls assuming to exercise exclusive authority, and Allen directed Warford and Brown to remove them without the 100-foot limit. In pursuance of the order, Warford and Brown approached Leabo and Miller. What then

occurred is detailed by Brown, who testified as a witness in behalf of the defendant as follows:

"Q. What was said? A. Mr. Warford says: 'You gentlemen will have to move outside of the 100-foot limit.'

"Q. Where were you and Warford at that time? A. We were in front of the polling place.

"Q. Where with reference to Miller and Leabo? A. They were sitting in front of the polling place leaning on a fence, or sitting on a fence.

"Q. When those words were spoken state what, if anything, Miller and Leabo did? A. They didn't say anything, but they both started to draw guns.

"Q. Describe to the jury how Mr. Leabo started to draw his gun. A. He reached in his overcoat pocket and pulled his gun out, that is, partly out; I seen the chamber, or the—what do you call it—the barrel of the gun, what holds the cartridges.

"Q. That is the chamber. A. The chamber; and about that time he got shot.

"Q. Who shot him? A. Mr. Warford.

"Q. What was Mr. Warford's position when he used the language: 'You men will have to get out of the 100-foot limit'? A. He just merely walked up to them and told them that.

"Q. What was the position of his hands at that time? A. Hanging by his side.

"Q. When did he start to draw his gun or guns with relation to the time that Mr. Leabo started to draw his? A. After they reached for theirs.

\*    \*    \*    \*    \*    \*    \*    \*    \*

"Q. What became of Mr. Leabo's revolver? A. I presume it was on the ground; it was in his hand when he fell.

"Q. Was it clear out of his pocket when he fell from the fence? A. Yes, sir."

The defendant offered to prove by this witness the directions given him and Warford by Allen. Objection was interposed and sustained, whereupon counsel for defendant made the following written offer:

"We offer to show by the witness Brown, who is on the stand, that he and the defendant Warford were ordered by Jack Allen, who was their superior deputy sheriff, to remove from the 100-foot line all constables and deputy sheriffs save one constable and one deputy sheriff, and that in pursuance of said orders they went to Miller and Leabo and requested them to move out of the 100-foot limit."

The Court: "The offer is denied." Defendant excepts.

Counsel for defendant offered to prove by deputy sheriff Allen that in pursuance of instructions from the sheriff he gave to Warford and Brown directions to remove two of the constables from the 100-foot limit. This evidence was rejected, whereupon counsel made the following offer in writing:

"We offer to show by the witness Allen, who is on the stand, that a short time before the shooting he told Warford that he had instructions from the sheriff that it had been agreed that there should be but one constable and one deputy sheriff at each polling place, and that he then directed Warford to remove two of the constables from the 100-foot limit, and also to order all deputy sheriffs except one out of the 100-foot limit."

The Court: "The offer is denied." Defendant excepts.

Counsel for defendant offered in evidence the written appointment and oath of office of plaintiff in error as deputy sheriff, which was rejected. Counsel offered to prove by witness Inman that he told plaintiff in error about fifteen minutes before the homi-

cide that Miller and Leabo had made threats against him.    This evidence was rejected, whereupon counsel for defendant made the following written offer:

"We offer to prove by the witness Inman, who is now on the witness stand, that he told Mr. Warford about fifteen minutes before the shooting that Miller and Leabo had been making threats, and that they were known to be dangerous men, and were likely to cause trouble, and to be careful and take no chances with them."

The Court:  "The offer is denied."  Defendant excepts.

Mr. JUSTICE GODDARD delivered the opinion of the court:

1.   Did the court err in rejecting the testimony offered to prove the instructions in pursuance of which the plaintiff in error approached the deceased and requested him and Miller to remove outside the 100-foot limit?   The attorney general contends that the evidence was inadmissible for the reason that the agreement entered into by the county officials and the committees of the respective political parties was an absolute nullity because it was an attempt to deprive the judges of election of the power to appoint constables, conferred upon them by the statute (Mills' Ann. Stats., § 1618), and that Mr. Allen exceeded his authority as deputy sheriff in attempting to carry out the agreement in ordering the plaintiff in error to remove Leabo and Miller from the 100-foot limit, and therefore such orders afforded no justification for any attempted interference with Leabo and Miller by the plaintiff in error.

It may be conceded that the action taken by the county officials and the committees, notwithstanding it was a wise and prudent precaution in the circumstances, was without authority of law, and did not

confer upon the sheriff or the plaintiff in error authority to carry out such arrangement.

The controlling question, however, is not whether he had the right or legal authority to remove Leabo without the 100-foot limit, but did he believe he had the authority to do so?

Since malice is an essential ingredient of the crime of murder, he was entitled to show, not only his official capacity, but also the instructions under which he was acting, for the purpose of throwing light upon his motive at the time he approached the deceased, and it was for the jury to determine from all the circumstances in which he acted, the capacity in which, and the instructions, if any, under which he was acting, whether he was actuated by malice or whether in good faith he approached the deceased in obedience to the instructions of his superior. This testimony, therefore, was clearly admissible, and it is manifest that the court committed an error prejudicial to the rights of the plaintiff in error in rejecting it.

2. The admissibility of proof of threats communicated or uncommunicated, where there is any evidence tending to show self-defense, is too well settled to admit of discussion. While counsel for the people concede that this is the general rule, they attempt to justify the exclusion of the testimony of Inman that threats were made by deceased and communicated by him to the plaintiff in error shortly before the homicide, upon the assumption that plaintiff in error was the aggressor in that he acted without authority and approached deceased in a hostile manner.

The claim of the defense is that the plaintiff in error, acting under the belief that he had the right and that it was his duty to do so, approached Leabo and Miller and in a gentlemanly manner requested

them to retire from the 100-foot limit, and thereupon, without any justification for so doing, Leabo started to draw his gun, and that the plaintiff in error believed that his life was in imminent and immediate danger, and that in necessary self-defense he had the right to do what he did.   Testimony had been introduced tending to support these claims of the defendant.

Under this state of the evidence, the offered proof of communicated threats recently made by the deceased against the plaintiff in error should have been admitted.   As expressed in the case of *Davidson v. The People,* 4 Colo. 145, "It is the province of the jury to judge of the credibility of witnesses; to judge of the character of the acts on the part of the deceased testified to, as hostile or not, and it is the right of a prisoner to have the jury consider the acts of deceased in the light of recent threats made by him."

Numerous errors are assigned upon the giving and refusing certain instructions, but it is unnecessary to consider them, since the foregoing errors necessitate a reversal of the judgment.

For the reasons given, the judgment is reversed.

*Reversed.*

Mr. Justice Gabbert and Mr. Justice Bailey concur.