Argued October 31, decided November 20, 1911.

## STATE v. PARKER.

[118 Pac. 1011.]

CRIMINAL LAW—TRIAL—CONDUCT OF COUNSEL—PRESENTATION OF EVIDENCE—HARMLESS ERROR.

1. In a trial for murder, the prosecuting attorney called, as a witness, the wife of defendant, knowing that defendant would not consent to her testimony, and, after a ruling that she was incompetent, remarked on offering another witness, "Perhaps I had better ask the consent of the defendant before I put him on the stand." *Held,* that the offer of testimony of defendant's wife and the remarks following the ruling were improper, but not ground for reversal where the court directed the jury to disregard them.

HOMICIDE—HARMLESS ERROR—EVIDENCE—ORDER OF PROOF.

2. The erroneous admission of evidence on the direct case of the State, in a trial for murder, that the deceased was unarmed at the time of the shooting, and that he was not in the habit of carrying firearms, is harmless, where defendant relied solely on the plea of self-defense and claimed that deceased first pointed a pistol at him, and introduced evidence that deceased had owned a pistol and had been in the habit of carrying it, and had on several occasions threatened his life, since such evidence would have been introduced by the State in any event, and its introduction out of orderly sequence could have made no possible difference.

HOMICIDE—EVIDENCE—SELF-DEFENSE.

3. Evidence of previous threats made by deceased against defendant may of themselves be sufficient to raise a reasonable doubt as to which was the aggressor, where none might otherwise exist.

HOMICIDE—EVIDENCE—SELF-DEFENSE—PREVIOUS THREATS BY DECEASED.

4. Where the defendant admits the killing, but claims that deceased made the first assault, evidence as to threats against defendant made by deceased, is admissible.

From Union: JOHN W. KNOWLES, Judge.

The defendant, Jesse Parker, was convicted of the crime of manslaughter, and from the judgment and sentence which followed he appeals.          REVERSED.

For appellant there was a brief over the names of *Messrs. Cochran & Cochran* and *Mr. Thomas H. Crawford,* with oral arguments by *Mr. Charles E. Cochran* and *Mr. Crawford.*

For the State there was a brief over the names of *Mr. Francis S. Ivanhoe,* District Attorney, *Mr. Andrew M. Crawford,* Attorney General and *Mr. John L. Rand,* with an oral argument by *Mr. Ivanhoe.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

A large number of alleged errors are specified. in the brief of appellant, and we will now advert to those that furnish fair ground for argument.

1. The State called as a witness the wife of the defendant and was proceeding to examine her when an objection was interposed on the ground of incompetency. After some remarks by the district attorney, the court ruled that the witness was incompetent and directed the jury to disregard the offer. The prosecuting attorney then called another witness, saying:

"Perhaps I had better ask the consent of the defendant before I put him on the stand."

For this he was rebuked by the court, and the trial proceeded. No particular method is provided by statute for obtaining the consent of a defendant to his wife's testifying, and perhaps the fairer method would be to ask that consent in the absence of the jury. We are not prepared to say, however, that counsel has not the right to ask that consent in open court. In this particular case a former indictment was set aside because the wife of defendant was called and examined before the grand jury without defendant's consent, and counsel evidently knew that no consent would be given. Under these circumstances the offer of her testimony and the remarks following it were improper; but we think the remarks of the court

neutralized any effect that they were evidently intended to have upon the mind of the jury.

2. The State also, upon its direct case, offered evidence which was received over defendant's objection, tending to show that deceased was unarmed at the time of the shooting and that he was not in the habit of carrying firearms and never owned a pistol. The admission of such testimony in chief was error, but in this case it was harmless. The shooting was admitted by defendant, and he relied solely on the plea of self-defense and claimed that deceased first pointed and snapped a pistol at him and that his own use of a deadly weapon was to repel this felonious attack. He also called a large number of witnesses to prove that deceased had owned a pistol and was in the habit of carrying it and had on several occasions threatened his life. It is evident that this testimony would have been introduced by him in any event, and that the State's introducing testimony in chief which was properly rebuttal, in no way compelled him to adopt a different line of defense from that which he finally pursued and which was the only defense he could possibly have interposed. All the testimony objected to by defendant would have gone in later in any event, and the fact that it was not introduced in its orderly sequence could have made no possible difference.

3. Another alleged error is predicated upon the instruction of the court in regard to evidence of prior threats made by deceased. One of the instructions given is as follows:

"There is also some testimony tending to show former quarrels between the defendant and deceased, also evidence to show previous threats by the deceased against the defendant, and such threats or previous quarrels may be considered by you if you find there were such in case the circumstances of the case raise a doubt in regard to whether or not the defendant acted in self-defense for the purpose of aiding you in determining who was the

aggressor in the affray; but if you find that the deceased
at the time of the homicide made no actual overt demon-
stration against the defendant, and that the defendant
was the assailant, then, even though there were previous
threats and quarrels or bad feeling between them, that
would constitute no defense."

This instruction is erroneous and was highly preju-
dicial to defendant. It requires that there shall be a
doubt in the mind of the jury as to who was the aggressor
before they can consider evidence of previous threats of
the deceased; whereas, the law is that evidence of such
threats may itself be sufficient to raise a reasonable doubt
where none might otherwise exist. It is true that some
courts have used language which literally taken might
justify the instruction given by the learned judge who
presided on the trial of this case. Thus in *State* v. *Tarter,*
26 Or. 38 (37 Pac. 53), Mr. Justice LORD says: "So, also,
proof of threats not communicated is often admitted for
the purpose of corroborating evidence of those communi-
cated; and, likewise, where it is doubtful from the evi-
dence which party commenced the affray, communicated
threats are admissible to show who was probably the first
assailant" — citing Kerr, Homicide, § 396; *Wiggins* v.
*People,* 93 U. S. 467 (23 L. Ed. 941). It is submitted,
however, that the word "doubtful," as used in these cases
is used to indicate that state of the case wherein the evi-
dence is contradictory.

4. On principle there would seem to be no valid objec-
tion to the rule which we here announce. Take a case
where a man is killed and there are no eyewitnesses to
the affray. The slayer admits the killing, but claims that
the deceased made the first assault. Would not evidence
that deceased has frequently threatened to take the life
of the accused or to do him personal injury, that he had
carried these threats so far that he had been bound over
to keep the peace, that he had armed himself with the

avowed intent to do the accused bodily injury, be suffi-
cient in itself to raise in any man's mind a reasonable
doubt as to whether the accused was the aggressor; and
to a great extent this is the case at bar, as shown by
the testimony.   Under the circumstances the testimony
was admissible, not only because the case was doubtful
but admissible for the purpose of generating a doubt:
*State* v. *Thompson,* 49 Or. 46 (88 Pac. 583: 124 Am. St.
Rep. 1015) ; *Warford* v. *People,* 41 Colo. 203 (92 Pac. 24).

This is a case in which the evidence is very conflict-
ing, and under the circumstances we think a jury of the
vicinage are better qualified in some respects than we to
retry it.

The judgment is reversed, and a new trial ordered.

REVERSED.