No. 23,670.

WILLIAM S. FREW, *Appellee*, v. JOHN TEAGARDEN, *Appellant*.

SYLLABUS BY THE COURT.

1. ASSAULT AND BATTERY—*In Defense of Servant—Reputation of Plaintiff as Dangerous and Fighting Man—Competent Evidence.* In an action to recover damages for an assault committed in defense of a third person, testimony was competent to show plaintiff's general reputation for being a quarrelsome, dangerous and fighting man, and that this was known to the defendant.

2. SAME—*Defense of Servant or Relative—Rule of Self-defense Applies.* Plaintiff made an unprovoked assault upon a man twenty-one years of age who was in the employ of the defendant, and a relative by marriage. The assault occurred on the premises of defendant, who warned plaintiff not to strike the young man. Plaintiff struck him with his fist, and while attempting to strike him again, plaintiff was struck by the defendant with the broadside of a pitchfork, breaking his arm. *Held,* that the principle of self-defense applies where one resists by force an assault upon a servant or relative.

3. SAME—*Erroneous Instruction as to Justifiable Assault.* In such a case an instruction that unless the jury found from a preponderance of the evidence that there was reasonable cause by defendant to apprehend that plaintiff designed to commit a felony or to do some great personal injury to the servant, and that there was immediate danger of such design being accomplished, the assault was not justifiable, and the verdict should be for the plaintiff, is held erroneous.

4. SAME—*Use of More Force than Reasonably Necessary—Instructions.* In such a case an instruction that the defendant would also be liable to plaintiff even if the jury found the assault was justifiable by the defendant if the latter used more force than was reasonably necessary to prevent a felony or to prevent the doing of great bodily harm to the third person, was erroneous, the rule being that one may use in the defense of a third person so much force as reasonably appears to him to be necessary.

5. SAME. In such a case the person's conduct is to be judged by his situation as it reasonably appears to him. (*Sloan v. Pierce,* 74 Kan. 65, 85 Pac. 812.)

6. SAME—*Great Bodily Harm—Erroneous Instruction.* An instruction that great bodily harm means more than mere injury by the fist such as is likely to occur in ordinary assault and battery, *held,* when taken in connection with the other instructions referred to, erroneous.

7. SAME—*Right of Master to Defend His Servant.* The general rule recognized that the person who interferes to defend one whom he has a right to defend may go to the same extent that the defended party would be entitled to go in the defense of himself.

Appeal from Lynn district court; EDWARD C. GATES, judge. Opinion filed April 8, 1922. Reversed.

*John A. Hall,* of Pleasanton, for the appellant.

*Charles F. Trinkle,* of LaCygne, and *E. C. Hamilton,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

PORTER, J.: This case involves, among other questions, the right of a person to go to the assistance of another who is assaulted, and the degree of force he may lawfully use in such defense.

John L. and Ray Teagarden, brothers, live upon and farm land belonging jointly to themselves and their mother. In September, 1919, they had been engaged with a gang of men threshing wheat. The men were quitting work for the day. Among them was Lee Burnett, twenty-one years of age, who was employed on the farm, and who is a relative of John L. Teagarden by marriage. He had come in from the field and was working upon an automobile near the barn. William S. Frew, who lived a short distance from the Teagarden home, drove in from the field on a hayrack with his son. He declined an invitation to stay for supper and said he would go home, but told his son that he would drive down to the barn and settle with Lee Burnett. He drove to the barn, jumped off the wagon, went to Burnett and accused the latter of telling falsehoods about him, which Burnett denied. Frew called Burnett many vile and insulting names. John Teagarden had then come in from the field, and was carrying a pitchfork on his shoulder. He inquired what the difficulty was, and Frew said that Burnett had been lying about him, and that he was there to straighten it up. Teagarden said he thought there was no occasion for trouble. Frew replied that he would not go home until he had settled with Burnett. Teagarden told him they were law-abiding citizens and wanted no trouble. Continuing his abuse of Burnett, Frew advanced in a threatening attitude toward him; Teagarden warned him not to strike Burnett. Frew struck Burnett in the mouth. The latter staggered back some distance but did not fall. The blow cut through Burnett's lip, leaving a scar. Frew, who is left-handed, advanced again towards Burnett and was in the act of striking him when Teagarden struck Frew across the back and left arm with the broadside of the pitchfork, and the result was that one of the bones in Frew's arm was broken. He started towards Teagarden, who warned him not to come any further or he would stick the fork in him. Then followed some friendly conversation between the two men. Teagarden told Frew he was sorry

he broke his arm, and Frew said that the Teagardens had been good neighbors of his and had always treated him friendly. He got on his wagon and went home. His arm was placed in splints by a physician; six weeks later when the splints were removed the arm was found to be in a weakened condition; at the trial it was shown that there had not been a complete union of the fracture. This action was brought to recover damages for the injury. There was a verdict and judgment against Teagarden for $750, from which he appeals.

There is a complaint of the refusal to admit certain testimony. Defendant offered proof to show that Frew had the general reputation in the community there of being a quarrelsome, dangerous and fighting man, and that this was known to the defendant; also, that a complaint was filed before a justice of the peace charging Frew with an unlawful assault and battery upon Burnett and that Frew entered a plea of guilty and paid his fine. The excluded evidence was produced on the motion for a new trial. The principle of self-defense applies where one resists by force an assault upon a relative or one whom he has a right to defend. (*Dukes v. The State*, 11 Ind. 557.) The evidence as to the reputation and character of the plaintiff was competent and should have been admitted. And the record of his plea of guilty in the justice court, we think, was admissible, but its exclusion could not have been prejudicial, in view of his admissions that he assaulted Burnett.

Complaint is made of the following instructions:

"I instruct you that an assault may be justifiable by one person upon another, when there is reasonable cause to apprehend a design on the part of the person assaulted to commit a felony or to do some great personal injury and there shall be immediate danger of such design being accomplished. Now, in this case, before you can find that the assault was justifiable on the part of the defendant, you must find from the preponderance of all of the evidence in the case, that there was reasonable cause by the defendant, to apprehend that the plaintiff designed to commit a felony or to do some great personal injury to Lee Burnett and that there was immediate danger of such design being accomplished, and unless you so find from the evidence, your verdict should be for the plaintiff in such sum as you think proper from the evidence under these instructions. The defendant would also be liable to the plaintiff even if you find the assault was justifiable by the defendant, if the defendant used more force than was reasonably necessary to prevent a felony or to prevent the doing of great bodily harm to the said Lee Burnett.

"A felony is a crime punishable by imprisonment in the state penitentiary. The striking by plaintiff, of said Lee Burnett, was not a felony but a misdemeanor."

"'Great bodily harm' means more than mere injury by the fist such as is likely to occur in ordinary assault and battery."

The expressions, "great personal injury" and "great bodily harm" are used interchangeably, and mean the same thing. Reading the instructions together, it is apparent that they took from Teagarden all defense unless he was able to show by a preponderance of the evidence that he had reasonable cause to apprehend a design on the part of plaintiff to commit a felony or to do "great bodily harm" to Burnett. The jury were told that plaintiff's striking of Burnett was not a felony but a misdemeanor, and in effect, that since plaintiff, in his assault upon Burnett, was using only his fist, no great bodily harm could happen to Burnett; in substance, that defendant's assault upon plaintiff could not be justified merely to prevent an ordinary assault and battery upon Burnett. This was error. The instructions wholly failed to take into account the fact that the defendant had the right to use reasonable means to prevent the occurrence of an ordinary assault and battery; they failed to take into account the position occupied by the defendant with respect to Burnett, who was not only a relative but a servant. Again, they charged as a matter of law that defendant would be liable notwithstanding the jury should find his assault upon the plaintiff was justifiable, if he used more force than was reasonably necessary. The wording of the instructions left the jury to infer that they might consider what to them seemed from all the evidence to have been reasonably necessary to prevent the assault; while the correct rule is that the jury should consider from all the circumstances what reasonably seemed to the defendant necessary to prevent the assault.

In *Sloan v. Pierce*, 74 Kan. 65, 85 Pac. 812, an action to recover damages for an assault and battery, the defendant sought to justify upon the ground that he had reason to believe and did believe that it was necessary to protect his father from injury. It was held that "a person's conduct is to be judged by his situation as it reasonably appears to him." (Followed in *Busalt v. Doidge*, 91 Kan. 37, 136 Pac. 904.) The general rule is thus stated in 5 C. J. 752:

"One may use, in the defense of a third person, so much force as reasonably appears to be necessary, although, in fact, none is necessary, and he is not required to nicely gauge the proper quantum of force; nor is it necessary that the danger be actual if defendant had reason to believe, and did believe, that it was actual and imminent."

Burnett was a relative as well as an employee, and Teagarden

occupied the position of master of the gang of workmen, and had the right to use such force as reasonably seemed necessary to prevent the assault and battery of his servant.

"A servant may strike another in order to prevent an injury to his master, or a master may come to the defense of his servant, if the servant was not the aggressor." (5 C. J. 637.)

"Since the force to constitute an assault and battery must be unlawful, the relationship existing between the parties or the official capacity in which defendant acted may afford an excuse or justification, if the privilege is not abused and excessive force employed." (5 C. J. 752.)

In *Orton v. The State,* 4 Greene (Iowa) 140, it was held that a master may do that to protect his apprentice which another person could not do without being an assailant or giving provocation for an assault. The general rule is that the person who interferes to defend one whom he has the right to defend may go to the same extent that the defended party would be entitled to go in the defense of himself. (*State v. Herdina,* 25 Minn. 161.)

The judgment is reversed and a new trial ordered.