Argued October 31, 1950; reversed and remanded January 24, 1951

# LINKHART *v.* SAVELY

227 P. (2d) 187

486

*Blaine Hallock,* of Baker, argued the cause for appellant. On the brief were Hallock, Donald, Banta & Silven, of Baker.

*Austin Dunn,* of Baker, argued the cause for respondent. On the brief were Dunn & Jackson, of Baker.

Before Lusk\*, Chief Justice, and Brandt†, Rossman, Hay and Warner, Justices.

## BRAND, C. J.

This is an action for assault and battery in which the plaintiff Linkhart seeks compensatory and punitive damages from the defendant Savely. It is alleged that the defendant maliciously, without warning, and while plaintiff's back was turned, struck the plaintiff with a metal chair, causing serious injuries. The answer alleges that the plaintiff is a powerful, turbulent and dangerous character; that he was the aggressor in the affray; that he struck the defendant's son-in-law, Wayne Hyde, in the face and then turned and approached the defendant in a threatening and belligerent manner, and that the defendant, in order to protect his said son-in-law and himself, struck the plaintiff with the chair. The case was tried by a jury, and verdict and judgment were rendered in favor of the plaintiff for special, general and punitive damages in the total sum of $5000. The defendant appeals.

The first eight assignments of error relate to rulings on evidence or to instructions given or refused. They must be considered upon the basis of the record as it appeared prior to the return of the verdict, and considering the fact that there was a sharp conflict of testimony upon the material issues in the case. The last two assignments of error relate to the denial of motions for new trial.

The evidence discloses that the persons immediately involved in the altercation were connected with a "Showdeo", or exhibition, sponsored by the Trail Riders' Club of Baker, Oregon. Pursuant to previous arrangement, the following persons met at the Royal Cafe in Baker after the show: The defendant Savely,

---

\* Chief Justice when this case was argued.

† Chief Justice when this opinion was rendered.

his friend, Mrs. Hill, Mr. and Mrs. Wayne Hyde, Mr. and Mrs. Gray Hester and Clyde Ward. Hester was president, Savely, vice president, and Ward was one of the Showdeo judges. Mrs. Hyde was the daughter and Wayne Hyde the son-in-law of the defendant Savely. The party were seated at a table for dinner and thereafter were joined by the plaintiff Linkhart and his wife. The evidence is conflicting as to whether the plaintiff had been invited to join the group. The plaintiff Linkhart is a man 6 feet 2 inches tall, weighing 200 pounds. Before coming to dinner he had been drinking beer and whisky and during the progress of the Showdeo a controversy had arisen between the plaintiff on one hand, and the defendant and Mr. Ward on the other. There is evidence that the plaintiff stated that he could whip the defendant and that the defendant agreed that "no doubt he could". There is other evidence that the plaintiff conducted himself in a belligerent manner on that occasion. After all the persons mentioned had been seated at the table, the plaintiff arose from his place and went over to Mr. Hester's side. Again a dispute ensued and shortly thereafter the plaintiff, Hester, Hyde and the defendant were all standing in close proximity to each other. Tending to support the defendant's position, there is evidence that the plaintiff shoved Hester and indulged frequently in what are known in the west as fighting words. Hyde, a young man 23 years of age, weighing 146 pounds, requested the proprietor of the cafe to quiet the plaintiff or to put him out, stating that there was about to be trouble. When requested to leave, the plaintiff profanely refused, and when Hyde asked the plaintiff to quiet down, the plaintiff struck Hyde in the jaw. His glasses fell to the floor. Hyde testified

that just after he stooped over to retrieve his glasses, the plaintiff was "facing on a slant, almost directly to Mr. Savely", whereupon the defendant Savely hit the plaintiff with the chair. Defendant Savely testified as follows:

"Q. Now you say that Linkhart struck Hyde? A. Yes.

"Q. Where did he hit him? A. Right here on the jaw.

"Q. What happened to Hyde? A. He knocked him clean over the top of the table.

"Q. Then what did Linkhart do? A. Turned and looked right straight at me and started for me. I knew in five seconds I was going to be smeared all over the back end of that restaurant.

"Q. Did you have time to determine what you were going to do next, or how much force you should use? A. I was just going to stop him if I could.

"Q. What did it appear to you he was doing to Hyde? A. It appeared to me that he knocked him down and was going to jump in the middle of him. I didn't know.

"Q. Did you at that time use any greater force or take any other action than seemed necessary for you to do at the time? A. No, I knew I was no match for Linkhart. Him a prize-fighter, and he wanted to whip two people—that had me outclassed one hundred ways. I wasn't going to take any chances on him smearing me all over the back end of that restaurant. I am not as young as I used to be.

"Q. What was your attitude and your effort during that Sunday afternoon and evening with respect to encountering Linkhart or avoiding him? A. I run away from him all afternoon.

" * * *

"Q. You struck in defense of yourself? A. And in my son-in-law's. Anybody that thinks they can

pick on those two little old kids won't get away with it in my presence.''

To the contrary, the plaintiff testified as follows:

''A. We were standing in this manner. I was standing at the corner of the table, and Mr. Hester was standing about in this position, and Mr. Hyde was standing about like this, and I said, 'I think, Mr. Hester, that somebody ought to slap a little respect into yourself', and I made an open-handed slap at him, like that, and he ducked back in that manner, and whether my hand touched Mr. Hyde's glasses and knocked them to the floor, or whether it was Mr. Hester ducking my slap, I don't really know, but Mr. Hyde's glasses did fall to the floor, and I stooped like this to see if the glasses had been broken, and they were not broken, and Mr. Hyde stooped over and picked up the glasses, or started to, and the next thing I knew, I was in the hospital. Now, that's exactly what happened.

''Q. Did you ever at that time turn and face Mr. Savely? A. I never did.''

There was other testimony supporting plaintiff's contention that his back was turned to the defendant when he was struck by the chair. The plaintiff suffered a concussion of the brain, laceration of the scalp and a broken ankle. Hester denies that the plaintiff struck at him and alleges that the blow was directed at Wayne Hyde.

Such, in general, were the issues presented for the consideration of the jury.

### SPECIAL DAMAGES—PLEADING

■ The defendant asserts that the court erred in failing to sustain objections to certain questions with reference to alleged special damages. The court re-

ceived evidence that plaintiff was off work for over a month by reason of his injuries and that his monthly salary was $400. The court also received evidence concerning the amount of the doctor's bill, X-ray and hospital expense. The evidence was received over the objection that the damages were not properly pleaded. The complaint alleged that:

" * * * Plaintiff has suffered special damages in the sum of $488.00; that an itemized statement of said special damages is hereunto attached marked 'Exhibit A' and by this reference made a part hereof."

Exhibit "A" attached to the complaint was as follows:

"EXHIBIT A

"St. Elizabeth's Hospital........$25.50
X-rays ............................................. 12.50
Dr. Roger Biswell ....................... 50.00
4 weeks salary at $100 ............. 400.00

Total .................................. $488.00"

Defendant's first assignment of error is without merit. If he desired more specific allegations concerning special damages he should have filed a suitable and timely motion for that purpose.

The plaintiff also testified as follows:

"A. Well, I feel just about like I always did, except I have quite severe headaches and my eyesight doesn't seem to be like it used to be.
" * * *

"A. Since I had this blow on the head, I have had very severe headaches, and my eyesight doesn't function like it used to * * *".

Defendant made timely motion to strike the testimony concerning impaired eyesight. The motion was

denied and the ruling is made the basis of defendant's Assignment of Error No. 2.

■■ In *Stapleton v. Butensky*, 177 N. Y. S. 18, the complaint alleged that the plaintiff suffered permanent injuries by reason of the bite of a vicious horse. Pleadings specified "injuries over his head, laceration of the scalp, severe injuries to the nervous system, and shock." Evidence was received that by reason of the injury his eyes became blurred and he was required to wear glasses. It was held that the complaint was not sufficiently broad to embrace injury to the eyesight. See also *Walker v. Bradt*, 233 N. Y. S. 388; 25 C. J. S., Damages, § 131, p. 753, and § 135, p. 769; 15 Am. Jur., Damages, § 305, p. 747, and § 306, p. 750. The rule which excludes evidence of special damages which have not been pleaded is peculiarly applicable when the injury is to an organ of such delicacy as the eye. We judicially know that accurate and scientific tests are available by which the condition of the eyes may generally be ascertained on examination by the medical profession. We think the defendant was entitled to notice and an opportunity to secure an examination of the plaintiff's eyes prior to trial. The failure to plead injury to the plaintiff's sight deprived the defendant of such notice. The ruling of the court constituted error. *Smith v. Pallay et al.*, 130 Or. 282, 279 P. 279.

## CROSS-EXAMINATION OF PLAINTIFF RE
### TURBULENT CHARACTER

The third assignment of error fails to comply with the explicit requirements of Rules 13 (A) 3a and 13 (A) 4a of this court which read as follows:

"Each assignment of error shall be clearly and succinctly stated under separate and appropriate

headings. Assignments of error presenting the same legal question are to be avoided." Rule 13 (A) 3a.

"Points and authorities relating to a particular assignment of error, or (where there are no assignments of error) relating to the particular proposition sought to be sustained, shall be grouped under each assignment of error or proposition." Rule 13 (A) 4a.

Assignment of Error No. 3 first states a proposition of law, then gives a summary of evidence followed by more than six pages from the transcript of testimony containing questions, answers, colloquy between court and counsel, and at least ten separate objections to offers of evidence. While we are not obligated to do so, we have examined the record for prejudicial error.

■ The defendant argues that evidence of the turbulent and dangerous character of the plaintiff was admissible. When self-defense is brought in issue, evidence of the turbulent character of the plaintiff is admissible as tending to indicate that he was the aggressor, whether such character be known to the defendant or not. On the other hand, where the turbulent character of the plaintiff was known to the defendant, such evidence is admissible, not only to show the probability of the acts imputed to the plaintiff, but also as bearing upon the defendant's apprehension of danger when he acted upon appearances. *State v. Thompson,* 49 Or. 46, 88 P. 583; 4 Am. Jur., Assault and Battery, §§ 172, 173, 174, pp. 208, 209; *Eldred v. Burns et al,* 182 Or. 394, 182 P. 2d 397, 188 P. 2d 154; *State v. Parker,* 60 Or. 219, 118 P. 1011; *Davenport v. Silvey,* 265 Mo. 543, 178 S. W. 168. Recognizing these principles upon which defendant relies, we turn to the specific issues pre-

sented. Upon cross-examination the plaintiff testified as follows:

"Q. But you have had a good many fights outside of the ring? A. Oh, I wouldn't say that.

"Q. Well, how many do you think?

"Mr. Dunn: We object, Your Honor. This is irrelevant and immaterial to this case.

"Mr. Hallock: This is cross-examination.

"Mr. Dunn: It is not proper cross-examination. * * *

" * * * *

"The Court: I think it would be more properly gone into as defendant's case—so far as defendant's case is concerned. Objection sustained.

" * * * *

"Q. * * * Haven't you done some shadowboxing, Mr. Linkhart?

"Mr. Dunn: We object, Your Honor, not proper cross-examination and entirely outside the pleadings.

"The Court: Objection sustained.

"Q. * * * Don't you recall, Mr. Linkhart, of being down at the Baker Club at the Baker Hotel and demonstrating there, rather vigorously, how a man does his shadow-boxing, and you had to be told if you persisted in such, you would have to get out?

"Mr. Dunn: We object, Your Honor, not proper cross-examination. He knows it isn't.

"The Court: The objection will be sustained."

As an offer of proof, counsel for the defendant stated:

"We propose to ask the witness in connection with his discussions regarding the use of his hands, whether or not a few months before June, 1949, he struck in the face two leading citizens of Baker.

"Mr. Dunn: It is improper cross-examination. We object. It is a part of the defense and ought to be put on as their case in chief.

"The Court: The offer is rejected."

■■ We cannot say that the court abused its discretion in sustaining objections to the questions propounded. The evidence offered, being elicited on cross-examination, could only have been considered as bearing upon the credibility of the plaintiff as a witness. The fact of turbulent character by a plaintiff in an action for assault is relevant only upon issues such as self-defense, which being affirmative, belong in the defendant's case.

We will next consider the second of eighteen alleged errors which are grouped together under the heading "Assignment of Error No. 6". This assignment reads:

"The court erred in giving the following instruction * * *:

" 'You are instructed that under the pleadings as made up in this case, the plaintiff, Linkhart has the burden or obligation to prove to you by a preponderance of the evidence that the defendant, Savely, was the aggressor, or that Savely used more force than in your judgment was justifiable in repelling what Savely believed was an imminent attack upon him by Linkhart. If the plaintiff, Linkhart, fails to satisfy you by a preponderance of the evidence that he was not the aggressor, or that Savely used more force than in your judgment was justifiable in repelling what Savely believed was an imminent attack upon him by Linkhart, he cannot prevail in this case.' "

To the instruction given the defendant took the following exception:

"Defendant excepts to the action of the court, when delivering its instruction No. XII, being a

portion of defendant's requested instruction No. II, by adding additional matter rendering the instruction as given confusing and misleading, having withdrawn from the jury any consideration of the character or reputation of the parties for peace and quietude.''

In this connection we are referred by defendant's brief to Exception No. 16 in the Bill of Exceptions. That exception deals with an entirely different matter. A search of the bill discloses that defendant should have referred to Exception No. 14 in which defendant's request No. II is set forth. We will first observe that the instruction actually given, though unfortunately stated, did nevertheless correctly set forth the law. If plaintiff was to prevail, it was incumbent upon him to prove that Savely was the aggressor, or, if he failed in that respect, then to prove that, although plaintiff himself was the aggressor, the defendant used more force than was justifiable in repelling the aggression. However, the quoted exception taken at the trial suggests a more serious objection, not to the giving of the instruction, but to the refusal to give portions of defendant's request No. II. Turning to the Bill of Exceptions and No. 14 thereof, we find the requested instruction set forth. If given as requested, it would improperly have eliminated the issue of excessive force and would have instructed the jury that if the plaintiff failed to prove that the defendant was the aggressor he could not prevail. The court rightly refused to give the instruction as requested and properly modified it by adding a statement relative to excessive force.

One part of requested instruction No. II was deleted by the court. That part reads as follows:

"In determining which party you believe to have been the aggressor you are entitled to consider the

character and reputation of both parties for peace and quietude to the extent indicated by the proof in this case.''

Normally, this court would not consider the propriety of this deletion, for (1) the assignment of error in the brief relates to the giving, not the refusal to give an instruction, and (2) the portion of the request which was deleted was a part of one entire requested instruction, other portions of which were erroneous. However, the exception taken at the trial did call to the attention of the court the fact that by the deletion, the court had ''withdrawn from the jury any consideration of the character or reputation of the parties for peace and quietude.'' We have held that the trial court did not err in limiting cross-examination concerning the turbulent character of the plaintiff, but we have also held that evidence of such character was admissible as a part of defendant's case, self-defense having been put in issue. At one time the trial court appears to have held the same view, for in limiting the cross-examination the court said, ''I think it would be more properly gone into as defendant's case''. The evidence in defendant's case shows that during the afternoon preceding the affray, the plaintiff was drinking, was telling ''what a tough man he was''; ''how hard his muscles was''; that he wanted to bet $200 that he could whip any two men in Baker; that he was a prize fighter; that there ''wasn't no two so-and-sos that could put him out'' of the cafe; that ''he was bragging about how he could whip anybody''. Witness Hester testified concerning the belligerent character of the plaintiff as follows:

''A. Oh, we had various meetings on this show and various meetings of our posse—we were organ-

izing a posse, and we were up to the Topz Cafe, and every night up there he would tell us of different men at some place or other he had whipped, and how. That was in different towns around, and even in Baker.

"Q. Did he mention the names of the towns?

"Mr. Dunn: We object, Your Honor."

The court sustained the plaintiff's objection to the last question only.

The defendant was certainly entitled to an instruction along the lines indicated by the deleted portion of defendant's requested instruction No. II, if given in harmony with the rules of law to which we have referred. However, the court not only refused to instruct on the subject, it also went further and gave the following instruction:

"At various times throughout the trial of this case, mention has been made of various times and occasions upon which inquiry was made as to the activities of both the plaintiff and the defendant which might reflect the characteristic on the part of one or both of them in regard to the inclination on the part of one or both of them to engage in physical combat, and in these instances the court has ruled that any such instincts are immaterial in this case. With such rulings, you are not to concern yourselves. As to whether or not testimony in connection with such instincts, if there were any such, is material in this case is a question of law that has been determined by the court, and no inference or inferences are to be drawn by you from such rulings. You are instructed that the reputations of either the plaintiff or the defendant as peaceful citizens are not an issue in this case, and you are not to consider the same, save and except as to what you find to have occurred during the afternoon and evening of June 19th, 1949."

■ This instruction was given in spite of the fact that the answer had alleged the turbulent character of the plaintiff, that he was the aggressor, and that the defendant acted in defense of self and in defense of his son-in-law Hyde. These errors have not been properly assigned in this court and the giving of the instruction last above quoted was not made the basis of an exception in the lower court. Nevertheless, since we consider that under the circumstances the defendant was deprived of a fair trial in the respects mentioned, we deem it our duty to invoke Rule 2 of this court which provides that "this court reserves the right to take notice of an error of law apparent on the face of the record", although not regularly presented in the assignments of error in the appellant's opening brief.

■ Since the case must be remanded for a new trial, we deem it proper to consider another matter. In connection with the giving or refusal of instructions, the defendant repeatedly called to the court's attention his claim of right to defend Wayne Hyde in addition to his right of self-defense. Since the undisputed evidence shows that the plaintiff was guilty of an assault upon Hyde, this issue became important. The defendant testified, "It appeared to me that he [the plaintiff] knocked him [Hyde] down and was going to jump in the middle of him. I didn't know." Again he testified, "I know he was going to jump in the middle of somebody—the fight was on." The evidence tended to indicate that a general melee was in prospect and was sufficient to put the defendant's claim of right to defend Hyde, as well as himself, in issue. From the Restatement we quote what may be considered the

common law rule which would control in the absence of statute:

"The actor is privileged to defend a third person from a harmful or offensive contact or other invasion of his interests of personality under the same conditions and by the same means as those under and by which he is privileged to defend himself therefrom if,

"(a) the actor reasonably believes that

"(i) the circumstances are such as to give the third person such a privilege of self-defense, and

"(ii) his intervention is necessary for the protection of the third person, and

"(b) the third person is or is reasonably believed by the actor to be

"(i) a member of his immediate family or household, or

"(ii) a person whom he is under a legal or socially recognized duty to protect."

Restatement of the Law, Torts, Vol. 1, § 76, p. 162.

The rule is further amplified by Sections 63, 140 and 141. The common law rule has been somewhat modified by statute in this state:

"Resistance to the commission of a crime may be lawfully made by the party about to be injured or by any other person in his aid or defense:

"(1) To prevent a crime against his person;
"* * *." O. C. L. A., § 26-2401.

■ Under this statute, and in substantial harmony with the rule of the Restatement, it has been held that a person cannot justify himself under this section if he does more in the defense of another than the latter

could do for himself. *State v. Yee Guck,* 99 Or. 231, 195 P. 363. Since the rule has thus been modified by statute, it follows that one may go to the aid or defense of a person who is attacked, whether or not the latter is a member of his immediate family or household, if the other conditions authorizing the defense of a third person are present.

In his brief, the defendant assigns as error the failure of the court to give the following instruction:

"Every person has the right to protect himself, his relatives, or the members of his household from personal violence. The law of nature comprehends and justifies many acts. The great principle of self-preservation is paramount to all obligations and if you find by a preponderance of the evidence that the defendant Savely or his son-in-law Hyde were unjustifiably attacked, or threatened by the plaintiff with great bodily harm, coupled with the present ability to accomplish such threat, then the defendant had the right to repel force by force in order to prevent the plaintiff from inflicting bodily harm upon Savely or the said Hyde, so long as the means which the defendant used were reasonable and not in excess of such as were necessary under the circumstances."

Thirteen pages further on the defendant again assigns as error the failure to give the same requested instruction, again setting it out in full. The fact is, that the jury was recalled after its retirement and the court gave the identical instruction as requested, thereby according to it special emphasis. No brief should be encumbered in this manner by matter both unwarranted and repetitious. The instruction given was as favorable to the defendant as the evidence warranted.

■ Under Assignment of Error 6(c) the defendant sets forth verbatim the court's instruction No. XIV together with the exceptions taken thereto. The error asserted is the giving of the instruction, but the error to which exception was taken was not the giving of instruction XIV but was the deletion from defendant's requested instruction IV of matter relative to the alleged right of defendant to defend Hyde. Assignment of Error 6(c) presented no question for our consideration. Defendant's instruction IV is set forth at a later point in the brief. The issue presented has already been covered in this opinion.

■ Under Assignment of Error 6(d) the defendant sets forth verbatim the court's instruction No. XVII. The error assigned is the giving of the instruction. The assignment is not well-taken for two reasons. First, the instruction given was unduly favorable to the defendant, and second, the exception taken did not call attention to any error in the instruction given. On the contrary the exception was to the deletion of a part of defendant's requested instruction No. VII. Assignment of Error 6(d) presents no question for our consideration and should have been omitted. A later assignment asserts that the court erred in failing to give defendant's requested instruction VII which reads as follows:

"The defendant Savely was the best judge of what he then believed to be necessary in order to defend himself against the attack, if any, of the said Linkhart, either against him, Savely, or against the said Wayne Hyde, and of the means to be used for such purpose. A party attacked or threatened with great bodily harm, or who sees a relative or member of his household being attacked is obliged in the very nature of the case to exercise his best

judgment at the time as to what shall be done under those circumstances, and his judgment is one which, if honestly exercised, is to a large extent controlling. It would be absolutely controlling unless you, as jurors, should find a preponderance of the evidence that his exercise of it at the time and under the circumstances disclosed by the evidence was such as was unreasonable.''

In support of this requested instruction the defendant cites Branson's Instructions to Juries, § 155, p. 193, where a similar instruction is approved by implication on the authority of *Kent v. Cole,* 84 Mich. 579, 48 N. W. 168. The other authorities on which the defendant relies are: *Frew v. Teagarden,* 111 Kan. 107, 205 P. 1023, 1025; *Sloan v. Pierce,* 74 Kan. 65, 85 P. 812; Restatement of the Law, Torts, Vol. 1, § 63, p. 120, § 76, p. 162; 4 Am. Jur., § 38, p. 147 and Section 50, p. 152. None of them support the instruction requested. As stated in the comments upon Section 63 of the Restatement of Torts:

''* * * The test is what a reasonable man in such an emergency would believe permissible and not that which, after the event and when the emergency is past, a reasonable man would so recognize as having been sufficient.''

Thus, a person's conduct is to be judged by considering his situation as it reasonably appeared to him at the time. *Frew v. Teagarden* and *Sloan v. Pierce,* both supra. But, in our opinion, it is a very different matter to instruct the jury that the defendant was the best judge of what he then believed to be necessary. The jury would be likely to understand such an instruction as meaning that the defendant was the best judge of the reasonableness of what he believed to be necessary. The jury, and they alone, are to determine

whether defendant's judgment, if honestly exercised, was reasonable in view of the circumstances in which the defendant found himself. Under no circumstance is the defendant's judgment controlling. The instruction as requested was properly refused.

By his fourth assignment of error the defendant complains of the failure of the court to give the following requested instruction:

"I instruct you as a matter of law that the plaintiff Linkhart had no justification whatever for striking or for attempting to strike either Mr. Hester or Mr. Hyde. In that situation the plaintiff Linkhart was the aggressor in the affray."

The requested instruction was misleading and was properly refused. It is true that the plaintiff was an aggressor in striking at Mr. Hester or Mr. Hyde, but one of the issues in the case was whether the defendant in the course of the affray struck the plaintiff when plaintiff's back was turned. If the instruction had been given, the jury might well have understood that the court was declaring as a matter of law that Linkhart was the aggressor as between the plaintiff and the defendant. This was clearly a jury question.

The refusal of the court to give the following peremptory instruction is assigned as error No. 5:

"I instruct that since there is no evidence of forethought or maliciousness in connection with the conduct of the defendant Savely, you may not assess any punitive or exemplary damages against him in this case."

The criminal code defines malice as involving a wish to vex, annoy, or injure another person. O. C. L. A., § 23-111. In civil cases malice has been held to mean the intentional doing of injurious act without

justification or excuse. *DeMarais v. Stricker et al.,* 152 Or. 362, 53 P. 2d 715; *Patterson v. Skoglund,* 181 Or. 167, 180 P. 2d 108. A tort committed with a bad motive or so recklessly as to be in disregard of social obligations, or an act wantonly, maliciously or wickedly done, is such a malicious act as authorizes the awarding of punitive damages. *Jaco v. Baker et al.,* 174 Or. 191, 148 P. 2d 938; *Martin v. Cambas et al.,* 134 Or. 257, 293 P. 601.

 Whether there is sufficient evidence to justify submission of the issue of punitive damages to the jury is a question of law for the determination of the court. *Gill v. Selling et al.,* 125 Or. 587, 262 P. 812. But it is also held that "malice may be presumed [inferred] from the manner in which an assault is committed." 4 Am. Jur., Assault and Battery, § 147, p. 196. The mere fact that an assault resulted from sudden passion does not take malice out of the case, proof that the assault was unjustifiable and that excessive force was used being evidence of malice sufficient to allow the assessment of exemplary damages. 4 Am. Jur., Assault and Battery, § 188, p. 218. Since the evidence presented a jury question as to the defendant's alleged defense of justification, it follows that the issue of malice and punitive damages also became questions for the jury. The assessment of punitive damages was, however, discretionary with the jury. Assignment of Error No. 5 is without merit.

The form in which the issues have been presented has doubled the labor of the court. The brief contains at least thirty separate assignments of error, many of which could have been omitted or consolidated. We have dealt only with those which appear most important, in view of the possibility of a new trial. Many

of the assignments, not specifically discussed, relate to the failure of the court to instruct adequately on the alleged right of defense of third persons. If this issue is again presented by the evidence, we assume that instructions will be given which will be consistent with the principles herein set forth.

The judgment is reversed and the cause remanded for a new trial.