Argued October 12, affirmed October 19, 1955

DEWALL *v.* FISHER ET AL
288 P. 2d 820

*Frank P. Santos* argued the cause for appellants. With him on the brief were Glenn R. Jack and James O. Goodwin, all of Oregon City.

*Dale Jacobs* argued the cause for respondent. On the brief were Uney & Jacobs, of Oregon City.

Before WARNER, Chief Justice, and TOOZE, ROSSMAN and PERRY, Justices.

ROSSMAN, J.

This is an appeal by John Fisher, one of the two defendants, from a judgment which was entered against both defendants in the following sums: $250, general

damages; $375, special damages; $2,000, punitive damages. The judgment was based upon the verdict of a jury. The cause of action out of which the challenged judgment arose was for assault and battery.

According to the complaint, the defendants, on September 20, 1952, assaulted and beat the plaintiff. Evidence, which is uncontradicted and unchallenged, indicates that, as a result of the injuries which the plaintiff sustained in the course of the alleged affray, he was rendered unconscious and did not regain consciousness for a period of 24 to 36 hours. It also indicates that he was confined to a hospital for two weeks and incurred the following expenses: hospital charge, $225; physician's fee, $200.

The defendant-appellant presents two assignments of error. The first is based upon orders which denied his motions for an involuntary nonsuit and for a directed verdict. The motion for a directed verdict assigned as the reason upon which it was based the following:

"* * * there is no evidence that the defendant John Fisher was in any way involved in the circumstances upon which the plaintiff bases his cause of action, and that at any time the Defendant John Fisher struck the plaintiff either in person or indirectly or with any other dangerous or deadly weapon."

The second assignment of error is based upon a ruling which denied a motion of the appellant to withdraw from the jury "the question of punitive damages on the grounds and for the reason there is no evidence that there were any acts of the defendants that were prompted by maliciousness".

We will consider jointly the two assignments of error.

September 20, 1952, at about 4:00 p. m. the plaintiff, together with his wife, uncle and cousin, entered a tavern of which the appellant was the owner. Shortly the appellant entered the establishment. A half hour or so later the altercation of brief length occurred which was succeeded by the filing of this action. The appellant admits that a fight took place and does not question the extent of the plaintiff's injuries, but, as is evident from his motion for a directed verdict, contends that he did not touch the plaintiff.

Evidence, which the jury had a right to believe, indicates that the plaintiff did not speak to the appellant, that he did not start the trouble, and that he did not strike or attempt to strike the appellant.

The appellant swore that the plaintiff's uncle, George Dewall, to whom we will refer as George, advanced upon him and caused him to become apprehensive. He said that thereupon a fight occurred between himself and George, in the course of which he (appellant) used an instrument known as a sap. The latter, made by the appellant, was fashioned out of a piece of rubber hose 15 inches long and one inch in diameter. Seven inches of the striking end of the sap was loaded with solder, according to a statement which the appellant made to the police officer to whom he surrendered the weapon. The other end was wound with friction tape so as to assure the hand of a firm grip. The weapon is one of the exhibits. The solder renders the striking end heavy and the rubber gives the contraption a snaplike facility similar to that of a whip. The weapon appears to be well adapted for the infliction of disabling blows. The encounter between the appellant and George lasted only a moment or two. George was immediately knocked to the floor, suffered a broken neck, broken vertebra and was hors de combat.

However, that part of the trouble is of only collateral interest in this case.

The appellant claims that when George approached him, the plaintiff moved as if he were going to assist his uncle and that, at that juncture, the other defendant, Frank Eugene Blakely, seized the plaintiff. Thereupon, the latter and Blakely, so the appellant swore, became involved in a fight. In the course of the latter only two blows were struck, if the appellant told the truth. Both blows knocked the plaintiff down. When the plaintiff fell the second time, his body went through a door which opend upon the public sidewalk and his head struck the concrete walk, so the appellant said. In that manner, the appellant accounts for the severe injury to the plaintiff's skull and for his unconsciousness. The appellant claims that he did not touch the plaintiff at any time. In addition to the injury to his head, the plaintiff had numerous lacerations and injuries in the nature of black and blue areas over his face, neck, chest and shoulders. His left ear was badly lacerated. The appellant was unable to account for those injuries.

The plaintiff swore that he had no recollection whatever of anything that happened after he entered the tavern and until consciousness was restored to him in the hospital. The appellant argues that the record contains no evidence that he struck, injured or fought with the plaintiff.

The defendant Blakely swore that he, not the appellant, struck the plaintiff. He undertook to exonerate completely the appellant. Blakely said that he used nothing except his fists and that he struck only two blows. He described his self-asserted participation in the affray in substantially the same manner as the appellant had done. He, too, claimed that the second

blow caused the plaintiff to fall through a door to the concrete public sidewalk where, according to him, the plaintiff's head struck the hard concrete. Like the appellant, he was unable to account for the numerous wounds which the physician had found upon the plaintiff, but suggested that the plaintiff may have sustained the wounds while engaged in his occupation, which was that of a logger. Blakely testified that in some previous accident he (Blakely) had fractured the bones in one of his legs and that he was still crippling around with the aid of a cane on the day of the fight. Accordingly, if he is the one whose blows rendered the plaintiff unconscious for more than 24 hours, and which, likewise, left visible marks in many places upon the plaintiff, he did so as a cripple. We observe in the record that the plaintiff was 30 years of age, was in good health and that his occupation was that of a logger. No one suggests that Blakely used his cane as a weapon during the fracas.

The testimony of the physician who attended the plaintiff in the hospital described the injured man's face, chest, wrists and shoulders as presenting numerous black and blue areas. This witness said that blood vessels under the surface of the skin were broken in many places and thereby caused the black and blue areas. The physician described a bad laceration in the plaintiff's left ear and said that when the plaintiff reached the hospital his face and clothing contained much blood. A sample of the plaintiff's spinal fluid which the physician secured showed that the spinal fluid was "grossly bloody". That fact, so the physician swore, indicated that there had been enough damage to the brain that a blood vessel had been broken which leaked blood into the spinal fluid. Going on, the witness expressed the belief that the nature of the plain-

tiff's wounds indicates that "he obviously had been hit with some type of an object that didn't break the skin but had a dull enough hitting surface with enough force to break some of the small blood vessels under the skin." We observe from the record that only the appellant used any weapon in the affray. His was the sap which we have already described. It had a dull hitting surface. Blakely was unarmed.

A police officer, who was called to the tavern to investigate the affray, swore that when he arrived he talked to the appellant. The officer gave the following testimony:

"Q At that time did Fisher [appellant] tell you whether or not he had hit or had any fight with Derrill Dewall [plaintiff]?

"A It seems that he said that he was pretty angry at the time, and he didn't know whether he hit him or not.

"Q He didn't know whether he hit him or not?

"A That's right.

\* \* \*

"Q Did he ever tell you anything relative to his anger, whether or not he was mad?

"A Oh, he said he was pretty mad, and he didn't know who he hit or how hard he hit him or how often."

The plaintiff testified that while he was in the hospital the appellant called upon him and that then the following occurred:

"Well, when he introduced himself, I said, 'So you're the guy that hit me?' And he said 'Yes, I'm sorry.'"

Arthur Mills, a businessman who is chaplain of the Gideons, was confined in the same hospital during the

plaintiff's period and occupied a bed immediately adjacent to the plaintiff's. According to him, the appellant called upon the plaintiff while the latter was in the hospital and then, going on, Mills said:

"Well, as far as the exact words, it's been several months, but he come in and introduced himself as the man that hit or was in the scuffle with Mr. Dewall, and he also was giving it in an apologizing form or that he was sorry for the accident, and wanted to know what he could do."

From the foregoing, we believe that the trier of the facts could infer an admission by the appellant that he was the one who had struck the plaintiff.

The plaintiff's wife, believing that the party was about to leave the tavern, departed and was seated in her husband's automobile while the encounter was taking place. She was unable to testify to anything concerning the fight. The uncle of the plaintiff saw nothing of the phase of the encounter which involved the plaintiff. The plaintiff's cousin had left Oregon and was residing in one of the eastern states when the case was tried. He did not testify.

■■ We believe that the evidence above reviewed justified the trial judge in denying the plaintiff's motion for a directed verdict. The foregoing evidence could readily have justified a finding that the appellant struck the plaintiff with the sap. We also think that the viciousness of the assault, the use of the sap, the numerous wounds which were inflicted and their serious character warranted the action of the court in submitting to the jury the plaintiff's demand for punitive damages. The use of a sap, which was capable of dealing a lethal blow, and the infliction of numerous wounds could warrant an inference that the appellant—

if in fact he was the one who inflicted the blows—was prompted by malice, wantonness and oppression. *Linkhart v. Savely,* 190 Or 484, 227 P2d 187; *Stark v. Epler,* 59 Or 262, 117 P 276; and 25 CJS, Damages, § 123, p 720.

In our opinion, neither of the assignments of error reveals merit.

The judgment of the circuit court is affirmed.