Argued and submitted January 10, peremptory writ to issue December 26, 2003

Jason JOHANNESEN,
Personal Representative for the Estate of
Salina Johannesen, deceased,
*Plaintiff-Relator,*

*v.*

SALEM HOSPITAL,
David West,
and Oregon Hospital Anesthesiology Group, PC,
*Defendants-Adverse Parties.*

(CC 00C19280; SC S49323)

82 P3d 139

Kathryn H. Clarke, Portland, argued the cause and filed the brief for plaintiff-relator. With her on the brief was Richard M. Rogers, Portland.

Billy M. Sime, Parks, Bauer, Sime & Winkler, LLP, Salem, argued the cause and filed the brief for defendant-adverse party Salem Hospital. With him on the brief were Keith J. Bauer and J. Marie Bischman, Salem.

John Hart, Hoffman, Hart & Wagner LLP, Portland, waived appearance for defendant-adverse party David West, M.D.

Michael T. Stone, Brisbee & Stockton LLC, Hillsboro, waived appearance for defendant-adverse party Oregon Hospital Anesthesiology Group, PC.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.**

RIGGS, J.

Balmer, J., concurred and filed an opinion in which Gillette, J., joined.

---

** Leeson, J., resigned January 31, 2003, and did not participate in the decision of this case. Kistler, J., did not participate in the consideration or decision of this case.

## RIGGS, J.

In this original mandamus proceeding, we are called upon to apply the legal standards governing a trial court's decision on a motion under ORS 18.535 (2001)[1] to amend a complaint to add a punitive damages claim in a medical malpractice action. In the case from which this proceeding arises, the trial court denied plaintiff's motion to amend his complaint on the ground that he had not presented "clear and convincing" evidence that defendants had acted with malice. Because we conclude that the trial court did not apply the proper test in making that determination and that plaintiff's motion satisfied the statutory requirements for amendment of the complaint, plaintiff is entitled to a peremptory writ of mandamus.

The underlying action arises out of the medical treatment of Salina Johannesen (Johannesen), plaintiff's now-deceased wife. Although plaintiff named other defendants to the action, the only claim at issue in this proceeding is the claim against Salem Hospital (defendant) as the employer of the nurses who treated Johannesen. We recount the actions of Johannesen's doctors at some length, however, because the facts regarding overall medical care help to explain plaintiff's contention that the nursing staff should have intervened on Johannesen's behalf.

We present the evidence submitted in support of the motion to amend in the light most favorable to the plaintiff. *See* ORS 18.535(3) (directed verdict standard applies). Johannesen consulted Dr. West for prenatal care. During her pregnancy, she developed preeclampsia/pregnancy-induced hypertension, a potentially fatal condition. Delivery of the child is the only definitive treatment for severe preeclampsia. After Johannesen developed symptoms of preeclampsia, West left the office for about two weeks, entrusting Johannesen's care to a nurse practitioner who had limited experience with preeclampsia. During West's absence, Johannesen's condition worsened.

---

[1] ORS 18.535 was amended in 2003; those amendments do not apply to this action. Or Laws 2003, ch 552, § 2. All references to ORS 18.525 in this opinion are to the 2001 version of that statute.

Upon his return, West arranged for Johannesen to be hospitalized. She was admitted on November 8, 1999, with evidence of severe pregnancy-induced hypertension. Later that day, West transferred Johannesen out of the hospital's Labor and Delivery Unit and into the Postpartum Unit, which decreased the amount of monitoring she would receive. Johannesen suffered high blood pressure accompanied by headaches, visual disturbances, and epigastric pain, which are signs of end organ injury. West treated her with antacids and a pain killer. West did not order medication to reduce the chances of seizure until November 10, and he did not order any medication to control her blood pressure until she had lapsed into a coma.

On November 10, 1999, West decided to induce labor and attempt a vaginal delivery. He did not disclose to Johannesen that she was at risk for a fatal brain hemorrhage during the six to eight hours that he planned to allow for labor. Johannesen was transferred back to the Labor and Delivery Unit at 5:35 a.m. on November 10. Johannesen had a severe headache, such severe visual disturbance that she was unable to see, and epigastric pain. Dr. Anderson, the anesthesiologist, saw her twice that morning. After Johannesen labored all morning without success, West transferred her to the operating room for a caesarean section at approximately 12:50 p.m. She fit all the definitional criteria of coma before the first incision was made. The doctors performed the delivery without seeking a neurological consultation. When plaintiff asked why his wife was "sleeping," Anderson told him that his wife was tired.

Johannesen never recovered consciousness and died on November 17, 1999. The cause of death was a brain hemorrhage. Plaintiff brought this action against West, Oregon Anesthesiology Group, P.C., and defendant. Plaintiff reportedly has settled the claims against both West and the anesthesiology group, leaving only the claim against defendant.

In the trial court, plaintiff moved for leave under ORS 18.535 to amend his complaint to add a claim for punitive damages. In support of the motion, plaintiff submitted, among other things, an affidavit from an expert witness,

Dr. Mahlmeister, R.N., Ph.D., setting out what she considered to be the failures of the Salem Hospital nursing staff. The court denied plaintiff's motion. Plaintiff then brought the present proceeding seeking a writ of mandamus. He asks this court to direct the trial court to vacate its order denying the motion to amend his complaint to allege punitive damages and to require the trial court to enter an order allowing plaintiff to amend the complaint. In the alternative, plaintiff asks this court to require the trial court to reconsider plaintiff's motion in light of *Bolt v. Influence, Inc.*, 333 Or 572, 43 P3d 425 (2002).

■    When interpreting statutes, this court first looks to the text and context of the statute at issue. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). ORS 18.550 provides, in part:

> "Punitive damages shall not be awarded against a health practitioner if:
>
> "(1)   The health practitioner is licensed, registered or certified as:
>
> "* * * * *
>
> "(g)   A nurse under ORS 678.040 to 678.101; * * * and
>
> "(2)   The health practitioner was engaged in conduct regulated by the license, registration or certificate issued by the appropriate governing body and was acting within the scope of practice for which the license, registration or certificate was issued and without malice."

That statute applies to 19 categories of health practitioners. However, as the parties acknowledge, the statute does not include a hospital, such as defendant, within the list of health practitioners to which the statute applies.

Defendant argues that, despite the fact that it is not a health practitioner under the statute, it may assert the statute's protection against a punitive damages award because plaintiff's claim asserts that defendant is vicariously liable for harm caused by health care practitioners who defendant employed. According to defendant, it may not be

held vicariously liable for punitive damages because plaintiff's evidence is not sufficient to demonstrate that defendant's servants—nurses who are health practitioners—acted with malice in harming Johannesen.

Defendant's argument assumes that defendant may invoke the standards in ORS 18.550 if plaintiff relies on a theory of vicarious liability arising from the conduct of health practitioners that defendant employed. Plaintiff challenges that assumption for a number of reasons. We have no occasion in this case to decide whether defendant's assumption is correct. That is so because, as we explain below, even if defendant is entitled in this context to rely on the "without malice" standard in ORS 18.550(2), the record here is sufficient to create a triable issue about whether the health practitioners that defendant employed acted "without malice" under the statute. To address that question, we must construe the statutory phrase "without malice," and we turn now to that issue.

■ When the legislature adopted ORS 18.550 in 1987 (Or Laws 1987, ch 774, § 4), the term "malice" had a well-established definition in Oregon law. In 1951, this court stated that

> "[i]n civil cases malice has been held to mean the intentional doing of [an] injurious act without justification or excuse. A tort committed with a bad motive or *so recklessly as to be in disregard of social obligations*, or an act wantonly, maliciously or wickedly done, is such a malicious act as authorizes the awarding of punitive damages."

*Linkhart v. Savely*, 190 Or 484, 505-06, 227 P2d 187 (1951) (citations omitted; emphasis added).[2] ORS 18.550 provides no special definition of malice. Accordingly, we conclude that the well-defined legal meaning of that term that was accepted in 1987 applies. *See Gaston v. Parsons*, 318 Or 247, 253, 864 P2d 1319 (1997) (examining meaning of undefined statutory term in light of its well-defined legal meaning).

---

[2] In the same year that the legislature enacted ORS 18.550, this court commented on the evolution of the term, noting that as punitive damages were extended beyond torts involving actual ill-will "to other forms of culpable misconduct, * * * 'malice' was redefined to encompass them." *Andor v. United Air Lines*, 303 Or 505, 512 n 8, 739 P2d 18 (1987).

"Without malice" thus means without the kinds of conduct that this court listed in *Linkhart*.

■ Under ORS 18.550 and ORS 18.535, to amend a complaint to allow for punitive damages against health practitioners, a plaintiff must present evidence that the health practitioner acted with malice. Here, the trial court stated in a letter opinion that there was no "clear and convincing" evidence of malice. At the time of its ruling, however, the trial court did not have the benefit of this court's decision in *Bolt*, which, as plaintiff correctly asserts, established the proper test for determining when a party may amend a complaint to add a claim for punitive damages. *Bolt* held that the court should apply a "no evidence" standard in determining whether to allow an amendment for punitive damages under ORS 18.535. 333 Or at 578. Thus, the trial court failed to apply the proper test when considering plaintiff's motion to amend the complaint to allow for punitive damages.

■ Although we could, in the exercise of discretion, end our opinion here, we elect not to do so. To facilitate the processing of the case, we choose to consider whether the record contains some evidence that defendant's health practitioners acted with malice, in the sense discussed in *Linkhart*. In this case, plaintiff submitted expert affidavits in support of his motion to amend his complaint to add a claim for punitive damages. In her affidavit Mahlmeister, an expert registered nurse, maintained that the Salem Hospital nursing staff had acted here with aggravated disregard for their professional duties. Mahlmeister faulted the Salem Hospital nurses for failing to object to West's orders, failing to request blood pressure or anti-seizure medications, and failing to insist on a prompt delivery. In Mahlmeister's opinion, the Salem Hospital nurses "had an absolute duty to advocate for [Johannesen] to assure her safety." Indeed, Mahlmeister stated that their failures to act "showed outrageous indifference" to Johannesen's health and safety.

The trial court faulted the affidavit, stating that Mahlmeister was not qualified to offer an opinion about the nurses' state of mind. That is an incorrect characterization of Mahlmeister's affidavit. The affidavit contains explanations of the care that Johannesen allegedly should have received

and an expert assessment of the care that she did receive. A jury, properly instructed, could use that evidence to infer a reckless indifference to Johannesen's health; that evidence would permit a finding of malice.

■ Defendant makes an additional argument that it cannot be held vicariously liable for punitive damages without evidence of fault on its part. Defendant's arguments to the contrary notwithstanding, this court has considered and rejected that theory. *See Stroud v. Denny's Restaurant*, 271 Or 430, 435, 532 P2d 790 (1975) ("[I]f the servant has committed a tort within the scope of his employment so as to render the corporation liable for compensatory damages, and if the servant's act is such as to render him liable for punitive damages, then the corporation is likewise liable for punitive damages."). We perceive no reason to revisit that decision in this case. At this stage, we cannot decide finally whether defendant *is* vicariously liable for the conduct of its health practitioners. It is sufficient to state that defendant is incorrect in arguing that the record demonstrates that its health practitioners acted without malice. Consequently, factual disputes surrounding defendant's possible vicarious liability for its servants' conduct require the court to grant plaintiff's motion to amend.

The State Court Administrator shall issue a peremptory writ of mandamus directing the trial court to vacate its order denying plaintiff's motion to amend his complaint to add a claim for punitive damages and to enter an order allowing that amendment.

Peremptory writ to issue.

**BALMER, J.,** concurring.

I agree that plaintiff is entitled to a peremptory writ, and I agree with the majority's interpretation of the word "malice" in ORS 18.550(2). I write separately, however, to identify the consequences of that interpretation because the legislature may not have intended them.

The majority opinion correctly notes that the legislature adopted ORS 18.550(2) in 1987 and that that statute prohibits the award of punitive damages against certain licensed health practitioners if "the health practitioner was

engaged in conduct regulated by the license * * * and was acting within the scope of practice for which the license * * * was issued *and without malice*." (Emphasis added.) The majority opinion also correctly points out that the legislature did not define the term "malice" in ORS 18.550(2) and that the term, as it relates to punitive damages, previously had been defined in this court's cases. That definition, as the majority opinion states, includes tortious conduct so reckless as to be in disregard of social obligations. For those reasons, I agree with the majority's interpretation of ORS 18.550(2).

What the majority opinion fails to make clear, however, is the result that follows from those conclusions, *viz.*, that, if the legislature intended, by enacting ORS 18.550(2), to change the standard required to obtain an award of punitive damages against a health practitioner by requiring a showing of "malice," it failed in that effort. As the majority demonstrates, under this court's punitive damages cases, the term "malice" encompasses the different kinds of wrongful conduct that traditionally have justified a jury awarding punitive damages, whether that conduct was intentionally wrongful, "wicked," "wanton," or recklessly in disregard of social obligations. By using the word "malice," then, the legislature essentially stated a tautology: No punitive damages could be recovered unless punitive damages could be recovered.

Defendant asserts that the majority's interpretation of ORS 18.550(2) "would render the statute purposeless." It argues that this court should reject such an interpretation because the statute and the legislative history demonstrate that the legislature intended "to limit punitive damage awards against healthcare professionals." Defendant cites *1000 Friends of Oregon v. Wasco County Court*, 299 Or 344, 358, 703 P2d 207 (1985), for the proposition that this court should not "deem a legislative act meaningless unless no other reasonable conclusion is available."

It is not unreasonable to suggest, as defendant does, that the legislature would not have adopted ORS 18.550(2) unless it intended to change the law regarding the award of punitive damages against health practitioners. Moreover, the legislative history, which both parties discuss in their

briefs to this court, supports the proposition that at least some members of the committee that drafted the bill that became ORS 18.550(2) expected that they were changing the law. (As plaintiff points out, ORS 18.550 was part of a larger "tort reform" bill that included a "cap" on noneconomic damages.)

It remains, however, that, in amending the statute, the legislature used a legal term—"malice"—without defining that term and, according to the legislative history, with an understanding of the way that the Oregon courts previously had used that term. Absent a separate definition of the term, the legislature must be deemed to have meant to use the term in that traditional, well-understood sense. That being the case, the lead opinion's conclusion on this issue is inescapable.

Gillette, J., joins in this concurring opinion.